J.A. WHITTENBURG, III; Roger Horchow; Tradewind Airport Corporation; and Sapello Co., Plaintiffs,

v.

L.J. HOLDING CO. and Learjet, Inc., Defendants.

Civ. A. No. 92–1104–DES.

United States District Court, D. Kansas.

Aug. 13, 1993.

Robert E. Durrett, Coombs & Standlee, Chartered, Wichita, KS, Jody Sheets, Clay Holcomb, Sheets & Holcomb, Amarillo, TX, for plaintiff and movant.

Kenneth R. Lang, Pamela S. Clancy, Morrison & Hecker, Wichita, KS, for defendant.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on the defendants' motion for partial summary judgment on the plaintiffs' claims of fraudulent misrepresentation, negligent misrepresentation, and violations of the Kansas Consumer Protection Act (Doc. 78).

### Nature of the Claim

This is a diversity action claiming, among other things, misrepresentation in the negotiations leading to the purchase of a business jet.[1] Plaintiffs claim damages for economic loss as a result of alleged misrepresentations that they contend inflated the jet's market value. Plaintiffs also claim punitive damages.

### The Parties

Plaintiffs are the current and prior owners of the Lear Model 31 business jet, serial number 15 ("Lear 31–015"). Plaintiffs J.A. Whittenburg, III ("Whittenburg"), acting on behalf of Tradewind Airport Corporation, purchased Lear 31–015 from Learjet Corporation. Plaintiff Roger Horchow paid half the down payment and half the balance of the purchase price for the jet. Tradewind Airport Corporation ("Tradewind") subsequently transferred the title to plaintiff Sapello Ranch Co. ("Sapello"). Defendants Learjet, Inc. and L.J. Holding Co. (collectively "Learjet") are the successors to Learjet Corporation.

### Jurisdiction and Venue

The court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), (c)(1). Venue is proper in this district under 28 U.S.C. § 1391(a)(1)–(3). There are no disputes between the parties as to either jurisdiction or venue.

### Summary Judgment Standards

Under Fed.R.Civ.P. 56, the court is compelled to render summary judgment on behalf of a moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). An issue of fact is genuine if the evidence is sufficient for a reasonable jury to

1. Plaintiffs also claim that defendants' negligence in performing routine maintenance on their plane resulted in property damage that necessitated repairs. They claim the market value of the plane has been reduced as a result of the repaired damage. However, these negligence claims are not the subject of defendants' summary judgment motion.

return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

■ The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party must go beyond the pleadings and designate specific facts, by affidavits, depositions, answers to interrogatories, and admissions on file, showing that there is a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

■ The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). However, a mere scintilla of evidence in favor of the nonmoving party is insufficient to create a genuine issue of material fact. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

### Facts

The court makes the following findings of fact for the purpose of resolving the defendants' motion for partial summary judgment. With regard to controverted assertions of fact, the plaintiffs' version has been accepted as true to the extent supported by the record as required by Fed.R.Civ.P. 56(e).

In July or August 1989, plaintiff Whittenburg contacted Learjet and expressed interest in purchasing a Lear business jet. Bill Cook ("Cook"), a Lear sales representative, contacted Whittenburg in response to his initial inquiry. Whittenburg asked Cook to arrange a demonstration of a Lear Model 31. Cook accompanied two pilots who flew a Model 31 demonstrator from Wichita, Kansas, to Amarillo, Texas, where they picked up Whittenburg. They flew back to Wichita, Kansas, where Whittenburg met with Brian Barents ("Barents"), the president and chief executive officer of Learjet.

Whittenburg informed Cook and Barents that he was interested in purchasing a Lear plane for investment purposes. During the negotiation process, he discussed with them the various aspects of the market for such planes for the purpose of evaluating the profit potential of such an investment. Cook told Whittenburg there were only two Lear Model 31 jets still available for delivery in 1990, one of which was the Lear 31–015. Either Cook or Barents suggested that Whittenburg could capitalize on the market opportunity by purchasing both the remaining Lear Model 31s, which would ensure complete control of the market for that time period. These representations were made before Whittenburg signed the purchase agreement, and he relied on them in assessing the market value of the Lear 31–015.

Approximately one month after the demonstration, Whittenburg decided to purchase Lear 31–015. He contacted Cook to inform him of his decision. Whittenburg, as president of Tradewind, signed a purchase agreement for Lear 31–015 on September 29, 1989. At that time he wrote Learjet a personal check for the $500,000 down payment. The agreement provided for delivery of the plane in March 1990.

After signing the purchase agreement, Whittenburg learned that other Model 31 jets were in fact available for delivery in 1990 in addition to the two he was led to believe would be the only ones available in 1990. In late 1989 and early 1990, Bill Cook sent three memos by telefacsimile to Whittenburg regarding the availability of certain Lear models. The first, sent on November 20, 1989,

indicated that two Lear Model 31 jets would be available in 1990 in addition to Lear 31–015. The second, sent December 13, 1989, also stated that two Model 31s would be available in addition to Lear 31–015. Finally, on February 8, 1990, a third memo sent to Whittenburg showed that three Model 31 jets were available for 1990 delivery in addition to the Lear 31–015.

On December 20, Roger Horchow wrote a personal check for $250,000 to Whittenburg, representing half the down payment on Lear 31–015.

Whittenburg took delivery of the Lear 31–015 on behalf of Tradewind on March 15, 1990. On that date Whittenburg and Horchow each paid Learjet half the balance of the jet's purchase price. The total purchase price of Lear 31–015 was $4,190,400.

In December 1990, Tradewind transferred title to the Lear 31–015 to Sapello. The bill of sale was executed by Whittenburg as president of Tradewind. Since December 27, 1990, Lear 31–015 has been registered by the FAA to Sapello. However, Whittenburg and Horchow each still own a half interest in Lear 31–015. The title is held in the name of Sapello for convenience.

Plaintiffs contend that the value of Lear 31–015 at the time of the purchase was at least $469,000 less than the agreed price because a larger number of Lear Model 31s were available on the market in 1990 than the defendants had represented. Plaintiffs also claim punitive damages.

### Procedural History

Plaintiffs originally filed suit in the District Court of Dallas County, Texas, on or about July 24, 1991. Defendants filed a motion to dismiss, asserting the choice of forum provision in the purchase agreement.[2] On January 29, 1992, the Texas court granted the defendants' motion to dismiss the plaintiffs' claims with prejudice to refiling them in Texas, but without prejudice to refiling them in Kansas. Plaintiffs filed their claim in this

court on March 3, 1992. The parties have agreed that Kansas law governs plaintiffs' claims.

### Discussion

█ *Statute of Limitations.* Defendants initially argue that plaintiffs' claims of fraudulent and negligent misrepresentation are barred by the applicable statute of limitations. In a diversity case, the federal court applies the state statute of limitations. *See, e.g., Walker v. Armco Steel Corp.,* 446 U.S. 740, 745, 100 S.Ct. 1978, 1982, 64 L.Ed.2d 659 (1980) (citing *Guaranty Trust Co. v. York,* 326 U.S. 99, 109–110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945)).

Kansas statutes require both fraud and negligence actions to be brought within two years of the date the cause of action accrues. *See* K.S.A. 60–510; K.S.A.1992 Supp. 60–513(a). In general, for purposes of the two-year limitation, a cause of action does not accrue until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, the two-year period does not commence until the fact of injury becomes reasonably ascertainable to the injured party. *See* K.S.A.1992 Supp. 60–513(b). In addition, a cause of action for fraud is not deemed to have accrued until the fraud is discovered. K.S.A. 1992 Supp. 60–513(a)(3).

Defendants contend that Whittenburg had actual knowledge of Learjet's misrepresentations as to the number of Model 31s available in 1990 as early as November 20, 1989. On that date, Whittenburg received the first of three memoranda from Cook indicating that at least two other Model 31s would be available for purchase in 1990 in addition to Lear 31–015. Defendants argue that the two-year period began to run when Whittenburg obtained actual knowledge of the misrepresentation. They contend that this date at the very latest was February 8, 1990, when Whittenburg received the third memorandum from Cook showing three other Model 31s

---

2. The purchase agreement provides in part:
 This agreement shall be construed in accordance with and its performance shall be governed by the laws of the State of Kansas. The courts of Kansas shall have exclusive jurisdiction to hear and determine all claims, disputes, actions or suits which may arise hereunder.

available in 1990. Defendants reason that the two-year limitation period therefore expired no later than February 8, 1992. Defendants argue that the same reasoning applies to the negligence claim, which by statute did not accrue until the act giving rise to the cause of action first caused substantial injury. Defendants contend that the plaintiffs knew about their claimed injury on or before February 8, 1990, and the negligent misrepresentation claim is therefore barred.[3]

■ The defendant's argument misconstrues K.S.A. 60–513(b). For both the fraud and the negligence actions, the claims did not accrue until the act giving rise to the cause of action first caused *substantial injury*, or if the fact of injury was not reasonably ascertainable until sometime after the initial act, when the fact of *injury* became reasonably ascertainable to the injured party. *See* K.S.A.1992 Supp. 60–513(b) (rule applicable to each cause of action listed in subsection (a)). The court finds as a matter of law based on the uncontroverted facts that plaintiffs Whittenburg and Horchow did not incur substantial injury as a result of the alleged misrepresentations until at least March 16, 1990, the date they tendered the balance of the purchase price in exchange for delivery of the plane. The plaintiffs claimed damages based upon diminution of the plane's market value could not have been incurred prior to that time. Further, the extent to which the plane's value was diminished by the availability of other Model 31 jets in 1990 would not have been ascertainable in early 1990, several months prior to the scheduled delivery dates of the other planes.[4]

■ The court therefore rejects defendants' argument that the misrepresentation claims accrued when Whittenburg received information inconsistent with the alleged misrepresentations. Although Whittenburg perhaps should have known on the dates of the written communications from Cook that he had been provided false information on which he relied in negotiating the purchase, he could not have known at that time whether the contract price at the time of delivery, several weeks or months hence, would be substantially greater or lower than the market value, either at the time of delivery or later in 1990 when the other Model 31s were to become available. An essential element of a misrepresentation claim is detriment or injury to the plaintiff. *Canterbury Court, Inc. v. Rosenberg*, 224 Kan. 493, 582 P.2d 261, 269 (1978). A cause of action does not accrue for purposes of the limitation period until the right to maintain a legal action arises; *i.e.*, when the plaintiff could first have filed and prosecuted the action to a successful conclusion. *Pizel v. Zuspann*, 247 Kan. 54, 795 P.2d 42, 56 (citations omitted), *modified on reh'g on other grounds*, 247 Kan. 699, 803 P.2d 205 (1990). Plaintiffs could not have known whether the contract they claim was induced by misrepresentation would operate to their detriment in advance of the date delivery was tendered in exchange for the balance of the purchase price. Consequently, as a matter of law they could not have incurred substantial injury prior to that date.

■ The court acknowledges that when the evidence is in dispute as to when substantial injury occurs or when it becomes reasonably ascertainable, the issue is for determination by the trier of fact. *See Hatfield v. Burlington Northern R.R. Co.*, 747 F.Supp. 634, 639 (D.Kan.1990) (quoting

---

**3.** In response, plaintiffs contend that their claim is saved by K.S.A. 60–518, which reads:

> If any action be commenced within due time, and the plaintiff fail in such action otherwise than upon the merits, *and the time limited for the same shall have expired*, the plaintiff … may commence a new action within six (6) months after such failure.

(Emphasis added.) The court agrees that the Texas action was timely commenced, and that plaintiff failed in such action "otherwise than upon the merits" when the Texas court dismissed it on the basis of the choice-of-forum clause in the purchase agreement. However, at the time the Texas court dismissed the action on January 29, 1992, the two-year limitation period had not yet expired. *See* discussion in text *infra*. Therefore, the court does not believe that K.S.A. 60–518 applies in this case.

**4.** The February 8, 1990, memorandum transmitted to Whittenburg regarding the availability of other Lear planes showed that one Model 31 was scheduled for delivery in September 1990, a second in October 1990, and a third in December 1990.

*Hecht v. First Nat'l Bank & Trust Co.,* 208 Kan. 84, 490 P.2d 649, 655–56 (1971)); *Uhock v. Sleitweiler,* 13 Kan.App.2d 621, 778 P.2d 359, 361 (1988). In this case, however, the relevant facts underlying the issue are not in dispute. The defendants simply assert that the claim accrued when Whittenburg learned he had received incorrect information during contract negotiations, sometime between November 20, 1989, and February 8, 1990. However, Whittenburg's discovery that defendants had made a false representation is by itself insufficient as a matter of law to support a claim of fraudulent or negligent misrepresentation. A fraud claim does not "accrue" for purposes of triggering the statutory limitations period until damage or injury occurs, at the earliest. *See, e.g., Fleming v. Campbell,* 146 Kan. 294, 69 P.2d 718, 721–22 (1937) (fraud without injury is not actionable; demurrer properly sustained to alleged fraud action that failed to allege facts disclosing present damage or injury); *Uhock,* 778 P.2d at 361 (when injury not immediately apparent or when injury is delayed for a period of time, statute of limitations begins to run when injury is substantial or reasonably ascertainable) (citation omitted).

▪▪▪ The court also notes that Kansas law provides alternative remedies to a plaintiff who has been fraudulently induced to buy and pay for property delivered to him. *Waggener v. Seever Systems, Inc.,* 233 Kan. 517, 664 P.2d 813, 819 (1983). He may disaffirm the contract and sue for rescission, in which case he seeks restoration of his status before the sale was completed. *Id.* In the alternative, he may affirm the contract and sue for damages, as in this case. *Id.* If the buyer affirms the contract, he keeps the property, the seller keeps the consideration paid, and the buyer may recover damages for the difference in value between what he received and what he should have received. *Id.* Of course, under the facts of this case, the market value of Lear 31–015 could not have been determined before it was delivered on March 16, 1990. Further, it would not have been

possible to determine with any certainty even at that point how much, if any, the plane's value would diminish over time as additional Model 31s became available on the market.

Since plaintiffs' fraud and negligence claims accrued as a matter of law no earlier than March 16, 1990, plaintiffs' claim was timely filed in Kansas less than two years later on March 3, 1992.[5]

***Parol Evidence Rule and Warranty Disclaimer.*** The defendants next argue that the purchase agreement was completely integrated, and therefore the parol evidence rule operates to exclude all evidence of alleged negligent representations made prior to the signing of the contract. Further, the defendants contend that Kansas law precludes a claim for negligent misrepresentation in a product sales context if an integrated purchase contract specifically disclaims prior representations and warranties.

In response, the plaintiffs argue that evidence regarding the negotiation process in which the Learjet representatives allegedly misrepresented certain facts would not vary the terms of the purchase agreement in contravention of the parol evidence rule. They also argue that the disclaimer of warranties in the agreement applies only to the characteristics and qualities of Lear. 31–015, not to representations made as to the availability of *other* Learjet planes on the market.

The purchase agreement included the following provision:

I. Entire Agreement. The terms and conditions of this Agreement constitute the entire agreement of the parties hereto and supersede all previous negotiations, representations and agreements (which are declared merged into this Agreement) between the parties. This Agreement may not be varied, amended or supplemented except by a written instrument signed by both parties.

In addition, the agreement included the following warranty disclaimer:

*Prince v. Leesona Corp.,* 720 F.2d 1166, 1168–69 (10th Cir.1983), applying K.S.A. 60–518 to save a claim initially commenced in Missouri and refiled in Kansas.

---

**5.** It is therefore unnecessary for the court to address the parties' dispute concerning the applicability of K.S.A. 60–518 when the first claim is filed in another state. However, the court notes that it is bound by the Tenth Circuit's decision in

(5) There are no express or implied warranties by Learjet which extend beyond the description herein including exhibits. Except for the provisions set forth herein, including exhibits, there are no warranties of merchantability, fitness for a particular purpose, or otherwise. Except as expressly stated herein, Learjet shall not be liable in warranty, negligence or strict liability regarding any defects, failures or malfunctions in performance, design, manufacture or otherwise. The extent of Learjet's liability under this warranty is limited to the repair or replacement of defects in the manner described above. All other remedies against Learjet for consequential or other damages arising out of the sale, use or operation of the airplane covered by this purchase agreement are excluded.[6]

In support of their contentions, the defendants rely primarily on *Ritchie Enterprises v. Honeywell Bull, Inc.*, 730 F.Supp. 1041 (D.Kan.1990). In *Ritchie*, the plaintiff brought suit against the defendant alleging negligent and fraudulent misrepresentations inducing it to purchase a Honeywell computer, which failed to perform consistent with the defendant's representations and failed to meet the plaintiff's needs. The plaintiff also claimed breach of express and implied warranties, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty. The court noted that there was no Kansas decision to date recognizing a claim for negligent misrepresentation in the context of a product sales contract. The court concluded that the Kansas Supreme Court would follow two decisions from the federal courts in this circuit and strike down such a claim where an integrated purchase contract specifically disclaimed prior representations and warranties. *Id.* at 1051 (citing *Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22, 23–24 (10th Cir.1984) (applying New Mexico law) and *United States Welding, Inc. v. Burroughs Corp.*, 640 F.Supp. 350, 352–53 (D.Colo.1985) (applying Colorado law)).

 Our research has disclosed no cases decided by the Kansas appellate courts subsequent to *Ritchie* that address the issue. In the absence of contrary authority from the Kansas courts, this court adopts the reasoning in *Ritchie* and concludes that the plaintiffs may not bring a claim for negligent misrepresentation where the contract contains an integration clause and a clear disclaimer of all other remedies for negligence.

The plaintiffs, in response to the defendants' argument concerning their negligent misrepresentation claim, contend that the parol evidence rule does not bar evidence of misrepresentations made before the contract was executed, citing *Anthony Industries, Inc. v. Ragsdale*, 643 S.W.2d 167 (Tex.App. 1982), *error refused n.r.e.* (1983). However, in that case the plaintiff's claim was brought under the Texas Deceptive Trade Practices Act, which does not apply to this case. *See id.* at 169, 171. Plaintiffs also argue that the alleged misrepresentations in this case had to do with the defendants' actions concerning the manufacture and sale of other planes, as opposed to misrepresentations concerning the characteristics of Lear 31–015, the subject of the purchase agreement. While that may be true, the materiality of the alleged misrepresentation depended upon its influence on plaintiffs' evaluation of the market value of Lear 31–015, which in turn directly related to the agreed price to be paid for the plane. The court therefore declines to draw the distinction urged by the plaintiffs.

Plaintiffs also argue that they are not asserting a breach of warranty, and the warranty disclaimer in the contract does not apply to representations as to the availability of other planes on the market. The defendants, however, do not rely on the specific language disclaiming warranties, but rather the broad language of the contract, quoted above, which disclaims liability for negligence as well as warranty and strict liability.

 Finally, the court notes that Kansas law does not recognize a claim for negligent misrepresentation that seeks recovery of only economic losses. *See, e.g., Kelley Metal Trading Co. v. Al–Jon/United, Inc.*, 812 F.Supp. 185, 188 (D.Kan.1993); *Unified School District No. 500 v. U.S. Gypsum Co.*,

---

**6.** In the purchase agreement, the warranty disclaimer language is printed in capital letters, clearly setting it off from the other provisions in the contract.

788 F.Supp. 1178, 1179 (D.Kan.1992); *Nature's Share, Inc. v. Kutter Products, Inc.,* 752 F.Supp. 371, 380–82 (D.Kan.1990). The plaintiffs seek recovery of the difference between the contract price of Lear 31–015 and its actual value considering the availability of additional Model 31s on the market in 1990. The claimed damages without question fall within the definition of economic loss, whether direct or consequential. *See Professional Lens Plan, Inc. v. Polaris Leasing Corp.,* 234 Kan. 742, 675 P.2d 887, 897 (1984) (quoting White & Summers, *Uniform Commercial Code* § 11–5, at 406 (2d ed. 1980)). Therefore, the plaintiffs have not stated a claim for negligent misrepresentation upon which relief may be granted under Kansas law. Since the defendants did not timely raise this argument for purposes of summary judgment, however, the court does not rely on this ground in granting the defendants summary judgment on the claim of negligent misrepresentation.[7]

■ *Punitive Damages.* Defendants contend they are entitled to summary judgment on plaintiffs' claim for punitive damages, because the plaintiffs have advanced no evidence of willful conduct, wanton conduct, fraud, or malice necessary under Kansas law to support such a claim. *See* K.S.A. 60–3702(c). The plaintiffs contend in response that punitive damages are recoverable for fraudulent misrepresentation, and that the plaintiff need not show a likelihood they will recover punitive damages in order to bring a claim for their recovery in federal court.[8]

■ The court notes that the defendants have not moved for summary judgment on the merits of plaintiffs' fraudulent misrepresentation claim, and the court has determined that the fraud claim is not barred by the applicable statute of limitations. Under Kansas law, however, in order to recover punitive damages, the plaintiffs have the burden of proving, *by clear and convincing evidence,* that the defendants acted toward them with willful conduct, wanton conduct, fraud, or malice. K.S.A. 60–3702(c).[9] The defendants are entitled to move for summary judgment as to all or any part of any claim asserted against them, and may do so with or without affidavits. Fed.R.Civ.P. 56(b). The nonmoving party then has the burden of coming forward with specific facts showing that there is a genuine issue for trial. The nonmoving party may not rest upon the mere allegations or denials of his pleadings. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. *Id.; see also Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

The plaintiffs, in responding to the defendants' summary judgment motion, have not cited the court to any specific facts in the record supporting their claim for punitive

7. Nevertheless, it serves no purpose to allow the plaintiffs to proceed to trial on this claim, which would be subject to resolution in the defendants' favor on a motion for judgment as a matter of law under Fed.R.Civ.P. 50(a).

8. K.S.A. 60–3703 precludes a tort claim for punitive damages from being included in a petition unless the court enters an order permitting an amended pleading to assert a claim for punitive damages. Before allowing such an amended pleading, the court must be satisfied that the plaintiff has established a probability that he will prevail on his claim for punitive damages. However, this state statute has been held by this court and others in this district to be purely procedural in nature, and in conflict with Fed.R.Civ.P. 9(g), which requires claims for special damages to be specifically stated in the complaint. *See Metal Trading Services v. Trans–World Services,* 781 F.Supp. 1539, 1546 (D.Kan.1991); *Comeau v. Rupp,* 762 F.Supp. 1434, 1449 (D.Kan.1991); *NAL II, Ltd. v. Tonkin,* 705 F.Supp. 522, 526–27

(D.Kan.1989). Further, this court has held that the failure to apply the procedural statute in federal diversity cases will not result in unfair administration of the law, because the court may still determine whether the claims for punitive damages are appropriate and justified at a later stage of the proceeding, for example, on an opposing party's motion for summary judgment or on objections to jury instructions. *NAL II,* 705 F.Supp. at 529. Consequently, a federal court in a diversity case need not apply the statute. *See id.* at 527, 529 (state procedural rules apply in federal diversity cases if inequitable administration of law would result by not applying them) (citing *Walker v. Armco Steel Corp.,* 446 U.S. 740, 753, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980)).

9. K.S.A. 60–3702 is substantive law and therefore applies in diversity cases in Kansas. *See Ruiz v. Quiktrip Corp.,* 826 F.Supp. 1284, 1285 n. 1 (D.Kan.1993) (citing *Metal Trading Services,* 781 F.Supp. at 1544).

damages. They simply argue that they are not required to show a likelihood that they will recover punitive damages in order to bring such a claim in a federal diversity action. The plaintiffs have not made a sufficient showing to withstand the defendants' motion for summary judgment on the issue of punitive damages. The fact that the plaintiffs need not comply with K.S.A. 60–3703 in this diversity action does not exempt them from their obligations under Fed.R.Civ.P. 56(e) in responding to the defendants' motion for partial summary judgment with regard to plaintiff's claim for punitive damages for fraudulent misrepresentation. The court will therefore grant summary judgment to the defendants on the plaintiffs' claim for punitive damages.[10]

*Kansas Consumer Protection Act.* Defendants next contend that the plaintiffs cannot invoke the Kansas Consumer Protection Act ("KCPA" or "Act") because corporate purchasers are not entitled to its protection.[11] Since the Lear 31–015 was purchased by Whittenburg and Horchow on behalf of Tradewind, a corporation, defendants contend that plaintiffs' claim based on the KCPA must fail. Further, they argue that the plaintiffs have no evidence to support their claim that Learjet violated the Act.

In response, the plaintiffs concede that Lear 31–015 was titled in the name of a corporation at the time of purchase, although plaintiffs Whittenburg and Horchow paid the purchase price with their personal funds. While they note that Kansas courts have not yet considered the definition of an "individual" under the KCPA, they admit that the Fifth Circuit Court of Appeals has construed the Act and held that a corporation is not an individual and therefore does not qualify as a "consumer." *See Delhomme Industries, Inc. v. Houston Beechcraft, Inc.,* 669 F.2d 1049, 1060 & n. 34 (5th Cir.1982). Consequently,

plaintiffs have withdrawn their claim for recovery based upon the Kansas Consumer Protection Act.

Because plaintiffs have not met their burden of showing that a genuine issue of material fact remains, the defendants are entitled to summary judgment on the KCPA claim.

**IT IS BY THE COURT THEREFORE ORDERED** that the defendants' motion for partial summary judgment (Doc. 78) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the defendants are granted summary judgment on plaintiffs' negligent misrepresentation claim, on their claim for punitive damages, and on their claim based upon the Kansas Consumer Protection Act.

**IT IS FURTHER ORDERED** that the defendants' motion for partial summary judgment is hereby denied with regard to the plaintiffs' fraudulent misrepresentation claim.

---

10. Although the court has no obligation to do so, it has reviewed all of the evidence submitted by the parties in support of their summary judgment pleadings, and concludes that the evidence in support of plaintiffs' claim for punitive damages falls short of their burden to produce clear and convincing evidence as required by K.S.A. 60–3702(c).

11. The Kansas Consumer Protection Act was enacted for the purpose of protecting "consumers." *See* K.S.A. 50–623. "Consumer" is defined in K.S.A. 50–624(b) as "an individual who seeks or acquires property or services for personal, family, household, business, or agricultural purposes." Effective July 1, 1991, the Kansas Legislature amended the definition of "consumer" to include not only individuals but also sole proprietors. *See* K.S.A.1992 Supp. 50–624(b).