FDX SUPPLY CHAIN SERVICES, INC., Plaintiff,

v.

The NORTH FACE, INC., Defendant.

No. Civ.A. 99–2569–CM.

United States District Court, D. Kansas.

May 5, 2000.

Marc E. Elkins, Michael J. Jerde, Morrison & Hecker L.L.P., Kansas City, MO,

Mitchell G Blair, James F Lang, Calfee, Halter & Griswold, Cleveland, OH, for FDX Supply Chain Services, Inc., plaintiff.

Phillip B. Grubaugh, Thomas E. Deacy, Jr., Deacy & Deacy, Kansas City, MO, for North Face, Inc., The, defendant.

### MEMORANDUM AND ORDER

VANBEBBER, District Judge.

This matter is before the court on the plaintiff's motion to dismiss the counterclaims of the defendant (Doc. 21) and on the defendant's motion for leave to amend its counterclaims (Doc. 25). The issues have been fully briefed and are ready for ruling.

The defendant is a wholesaler and retailer of a line of sports clothing and equipment. In February 1999 the parties entered into a written interim agreement whereby the plaintiff (FDX) agreed to manage and operate the defendant's (North Face) warehouse and distribution services from a facility located in Lenexa, Kansas. In June 1999 the parties entered into a written Warehouse Services Agreement (WSA) which superseded the interim agreement and provided that the plaintiff would be responsible for the management and operation of defendant's Lenexa distribution facility. Disagreement developed over the operation of the facility and over payment for services rendered by the plaintiff.

In November 1999 defendant gave plaintiff thirty days notice that it was terminating the WSA. After the agreement was terminated, plaintiff filed this suit. The defendant answered and asserted five counterclaims. Plaintiff filed a motion to dismiss all counterclaims. The defendant responded and filed a motion to amend its counterclaims.

### I. Leave to File Amended Counterclaims

Defendant seeks leave to amend its first and second counterclaims—fraudulent inducement and negligent misrepresentation.

Because plaintiff has responded to defendant's counterclaims by filing its motion to dismiss, the defendant may amend its counterclaims only by leave of court. *See* Fed.R.Civ.P. 15(a). Furthermore, "[l]eave shall be freely given when justice so requires." *Id.* The Supreme Court has held that leave shall be granted unless the court finds a specific reason to deny it. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Court suggests several factors which would preclude leave to amend: undue delay, undue prejudice, bad faith or dilatory motive, futility of amendment, or repeated failure to cure defects. *See id.* Plaintiff suggests it would be futile to allow the defendant to amend its counterclaims.

Defendant argues that all facts necessary to plead fraud with the particularity required by Rule 9 were not available when it was required to file its counterclaims. Since the required facts are now available, defendant asserts that it should be allowed to amend its counterclaims. Plaintiff filed a single memorandum as its response to the defendant's motion for leave to amend and as its reply memorandum in support of its motion to dismiss. Plaintiff argues that the counterclaims as amended illustrate the futility of amendment. Plaintiff contends that defendant's motion to amend is an admission that the previous counterclaims were insufficient to state a claim. Plaintiff further argues that the amended counterclaims are insufficient to state a claim just as were the original counterclaims. Therefore, plaintiff argues, it would be futile to allow the amendment.

Plaintiff does not attempt to explain how it would be impossible in the circumstances for the defendant to state a claim involving fraud. Rather, it argues that the amended counterclaims are illustrative of the futility involved. The court finds that the plaintiff will not be prejudiced by allowing amendment of the counterclaims. As the court finds below, the first four of the defendant's amended counterclaims state a claim upon which relief may be granted. Therefore, plaintiff's argument of futility necessarily fails. Defendant's motion for leave to file amended counterclaims is granted.

## II. Discovery Before Summary Judgment

As a preliminary matter, the court notes that the plaintiff has invited the court to determine that defendant may not assert its counterclaims based upon principles of law which must be applied in light of the specific facts of this case. Yet the alleged facts of this case have not been tested through the discovery process, nor supported by affidavit, deposition or document of the plaintiff except for the agreements at issue. Rule 12 allows the court to decide a motion to dismiss based upon dispositive issues of law, or to treat it as a motion for summary judgment if matters outside the pleadings are presented and considered. The court has found that the issues of law presented here are not dispositive because the court is not presented with uncontroverted facts upon which to apply the principles of law. Further, matters outside the pleadings have not been presented by the plaintiff. Therefore, treating the motion to dismiss as a motion for summary judgment is not appropriate.

It appears the plaintiff is seeking summary judgment without allowing the defendant an opportunity for discovery to establish the facts and prove its theory of the case. Summary judgment is premature at this time, and the court will not allow plaintiff's motion to supplant our system of notice pleading and liberal discovery.

## III. Motion to Dismiss

Plaintiff has filed a motion pursuant to Rule 12(b)(6) to dismiss defendant's counterclaims for failure to state a claim upon which relief may be granted. The court will consider each counterclaim, as amended, in turn.

## A. Standard Applicable to a Motion to Dismiss

The court will dismiss a counterclaim for failure to state a claim only when it appears beyond a doubt that the counterclaimant (defendant here) can prove no set of facts in support of the theory of recovery that would entitle it to relief, *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *See Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher,* 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the counterclaimant. *See Witt v. Roadway Express,* 136 F.3d 1424, 1428 (10th Cir. 1998). The issue in resolving a motion such as this is not whether the counterclaimant will ultimately prevail, but whether it is entitled to offer evidence to support the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

## B. First Counterclaim (Fraudulent Inducement)

For its first counterclaim, the defendant alleges that plaintiff's employees made false representations at two or more meetings, and thereby induced defendant to enter into the agreements at issue. The defendant asserts these alleged false representations:

12. Among the false representations that [FDX] employees made at the July 1998 and December 1998 meetings, which are included in the presentation materials attached as exhibits A and B, was the following description of the purported benefits of hiring [FDX] to operate North Face's warehouse:

a. "Engineering, design, development, implementation and management expertise, up-font [sic] and ongoing";

b. "Robust logistics information technology systems";

c. "Expansion options to support [defendant's] business growth";

d. "Expert operations management skills with strong experience in consumer goods distribution";

e. "Stability, a strong asset base and the resources to grow with [defendant] through the long term."

(Proposed Amended Counterclaims at 4).

### 1. Elements of Fraudulent Inducement

To assert a counterclaim for fraudulent inducement, the counterclaimant must allege (1) false representations of existing and material fact, (2) the party making the statements knew they were false or made the statements recklessly without knowledge concerning them, (3) the representations were intentionally made to induce the counterclaimant to rely upon them, (4) the counterclaimant reasonably relied and acted upon the statements, and (5) the counterclaimant was damaged by its reliance. *See Minnesota Ave., Inc. v. Automatic Packagers, Inc.,* 211 Kan. 461, 466, 507 P.2d 268, 272 (1973); Pattern Instructions Kansas, Civil 3d § 127.40. The plaintiff's motion attacks the particularity of the fraud claims as required by Rule 9. The court finds that the amended counterclaims have cured this defect, and the plaintiff, in its reply brief, has abandoned that argument as to the amended counterclaim. Plaintiff also challenges defendant's showing as to the first and possibly as to the second element of fraud.

### 2. Discussion

Defendant argues the representations at issue relate to the plaintiff's experience in providing services which are the subject of the agreements and are false representations of present or past material fact upon which defendant reasonably re-

lied in executing the agreements. Defendant argues alternatively that even if the representations are not present or past material fact, they are forward-looking assertions based upon plaintiff's experience which assert a particular result is certain to follow. Defendant argues the false representations imply knowledge of facts sufficient to make the opinion certain.

Plaintiff counters that the representations were statements of opinion or promises of future action, neither of which are statements of past or present material fact. Plaintiff also argues that because the "true facts" alleged in the amended counterclaims do not relate to the false representations alleged, the counterclaims do not show that the representations were in fact false. Therefore, plaintiff claims it could not have known that the representations were false.

Defendant must prove each element of its counterclaim by showing that the representations were false and that plaintiff knew them to be false. In this case, the words of the alleged false representations, by themselves, defy precise definition. The nouns are general, describing various processes, activities and qualities of business organizations in the broadest of terms. The adjectives, by themselves, lack precise meaning. However, the question is not whether the pleading proves the case, but whether the defendant is entitled to offer evidence to support its counterclaims.

Defendant has alleged each element of fraudulent inducement. It has alleged false representation and knowledge of its falsity. As plaintiff argues, the false representations and the true state of facts alleged do not **necessarily** conflict. However, it does not appear that the defendant can prove **no** set of facts in support of its counterclaim. Defendant might define and prove the meaning of the representations such that it could show them to be false and show the plaintiff's knowledge of their falsity. Dismissal of the first counterclaim is inappropriate in these circumstances.

## C. Second Amended Counterclaim (Negligent Misrepresentation)

■ Plaintiff argues that the negligent misrepresentation counterclaim fails to state a claim for the same reason the fraudulent inducement claim fails. For its negligent misrepresentation claim, the defendant must prove that the plaintiff made false representations and that the plaintiff failed to exercise reasonable care in communicating the information. *See* Pattern Instructions Kansas, Civil 3d § 127.43. For the reasons discussed above, the court finds that the defendant may be able to prove a set of facts to show that the representations were false and that plaintiff failed to exercise reasonable care in communicating that information. Plaintiff primarily relies upon the argument that the economic loss doctrine applies and, therefore, defendant may not recover on its tort claim because it alleges purely economic loss. Defendant responds that the economic loss doctrine does not apply here because the duty of truthful representation is a legal duty owed by the plaintiff separate from any duties imposed by the agreements at issue in this case.

### 1. Economic Loss Doctrine

■ Plaintiff states the economic loss doctrine as: "[A] negligence action is unavailable if only economic losses are sought and ... any liability and damages are dictated by contract principles." (Mem. in Support of Pl.'s Mot. at 8) (*quoting Ritchie Enters. v. Honeywell Bull, Inc.*, 730 F.Supp. 1041, 1052 (D.Kan.1990)). However, in context, that is an incorrect statement of the law in Kansas. *See Parsons v. Davis*, No. 95–1458–JTM, 1997 WL 446264, at *4 and n. 1 (D.Kan. July 24, 1997). The "doctrine" might more appropriately be stated: When a defective product claim is brought and only economic losses are sought in damages, the claim shall be treated as a breach of contract claim, and any liability and damages are dictated by contract principles. *See id.*

As noted in *Parsons*, the law in Kansas is that a contractual relationship bars assertion of tort claims **covering the same subject matter** controlled by the contract. *See id.* at *4. However, where the claimant asserts a tort claim based upon a duty independent of the contract, that claimant may recover in tort. *See Graphic Technologies, Inc. v. Pitney Bowes, Inc.*, 998 F.Supp. 1174, 1179 (D.Kan.1998). Where damages are duplicative under the tort claim and the contract claim, a double recovery will not be allowed. *See, e.g. Parsons* 1997 WL 446264 at *4; *Equitable Life Leasing Corp. v. Abbick*, 243 Kan. 513, 516, 757 P.2d 304, 307 (1988). Even where damages are duplicative, punitive damages may be awarded based upon the tort claim if actual damages are recovered. *See Parsons*, 1997 WL 446264 at *4; *Equitable Life* 243 Kan. at 516, 757 P.2d at 307.

### 2. Discussion

The economic loss doctrine does not apply here because this case does not involve a defective product claim. *Graphic Technologies* and *Parsons*, as argued by the defendant, properly state the law in Kansas, and the cases cited by the plaintiff are not persuasive. *Ritchie Enterprises* is a defective products case, and applies the law correctly. The court in *Ritchie Enterprises* recognized the distinction in determining that the law in Kansas would require that a court "strike down a negligent misrepresentation claim in a product sales context where the ... contract specifically disclaims prior representations and warranties." *Ritchie Enters.*, 730 F.Supp. at 1051. The cases cited by the court in *Ritchie Enterprises* in support of its holding are also defective product cases. *See Ritchie Enters.*, 730 F.Supp. at 1052.

Defendant also cites *Whittenburg v. L.J. Holding Co.*, 830 F.Supp. 557, 564–65 (D.Kan.1993). *Whittenburg* is not a defective product case. However, all of the cases cited by that court in support of its statement of the law are defective product cases. Moreover, the court in *Whittenburg* did not rely upon the economic loss doctrine for its decision. *See Whittenburg*, 830 F.Supp. at 564–65. As a result any such application of the economic loss doctrine is dicta. Furthermore, even if it is not dicta, that decision does not bind this court. Because the defendant alleges a legal duty of truthful representation separate from any duty imposed under the agreements at issue, the court finds the second counterclaim states a claim of negligent misrepresentation.

### D. Third Counterclaim (Breach of Contract)

Plaintiff argues that defendant's counterclaim for breach of contract should be dismissed, in so far as the defendant seeks recovery beyond the liquidated damages provisions of the agreements at issue. The amount of damages recoverable is not an element of a breach of contract claim. *See* Pattern Instructions Kansas, Civil 3d § 124.01. Plaintiff does not assert defendant's failure to allege a required element. Therefore, plaintiff cannot be asserting that defendant has failed to state a claim upon which relief may be granted.

Plaintiff argues that the liquidated damages provisions are controlling and, therefore, defendant may not recover a greater sum in damages for breach. Defendant counters that, in the circumstances of this case, the liquidated damages provisions are unconscionable and may not be enforced. The court has insufficient facts to make a decision on the issue of enforceability of the liquidated damages provisions. The parties have not shown, through uncontroverted or established facts, the circumstance of this case which may or may not make the liquidated damages provisions controlling, nor those circumstances which may make its enforcement unconscionable. The parties shall be allowed discovery in order to establish the facts necessary to decide the issue. Defendant's counterclaim states a claim upon which relief may be granted. The court

may determine the amount of recovery later in these proceedings.

### E. Fourth Counterclaim (Breach of Contract)

 In its fourth counterclaim, defendant has alleged the agreements require plaintiff to reimburse defendant for certain charge backs and inventory shrinkage. Defendant alleges that charge backs and shrinkage of the type covered by the agreements have occurred, that plaintiff has not made reimbursement, and that plaintiff has therefore breached the agreements. Plaintiff argues that because defendant has not made a demand for reimbursement, a breach has not occurred. Defendant answers that the agreements do not specify a procedure for reimbursement and do not by their terms require a demand before the duty to reimburse arises.

The parties do not cite, and the court could not find any case law concerning the issue of whether a demand is necessarily required before a party may assert a breach. In fact, the parties cite no case law at all in their arguments concerning the fourth counterclaim. The defendant asserts a contract between the parties based upon sufficient consideration and contends that it performed the contract until the contract was terminated. Defendant further asserts that the plaintiff breached the contract by failing to reimburse for the shrinkage and charge backs that occurred during the course of the contract. Defendant has asserted every element of a breach of contract claim, *see Commercial Credit Corp. v. Harris*, 212 Kan. 310, 313, 510 P.2d 1322, 1325 (1973), and thus states a claim upon which relief may be granted.

Although the fourth counterclaim states a claim, plaintiff seems to allege a demand for performance is necessary before defendant may assert a breach of contract. Under Kansas law, had the **defendant** instituted this suit, its counsel would have been required to make a demand upon the plaintiff before filing suit. *See Nelson v.*

*Miller,* 227 Kan. 271, 284–85, 607 P.2d 438, 448–49 (1980). That demand is a prerequisite to filing suit, not a prerequisite to asserting a breach of contract. The law does not require a demand from a defendant before it may file a counterclaim. Whether a demand for payment is required before a party is in breach of a contract term may be an issue of law, and it may be that the filing of a counterclaim constitutes a demand for reimbursement. In any case, the issue will be decided upon the court's construction of the contract in light of the uncontroverted facts of the case. At this point neither party has asserted or admitted uncontroverted facts. It would be inappropriate for the court to construe the contract without allowing discovery of facts which relate to that construction.

Furthermore, defendant asserted an affirmative defense of set off for "the damages caused by plaintiff's breach of its contractual commitments." (Answer to First Amended Complaint at 4). This defense is essentially the same as defendant's fourth counterclaim. Therefore, whether a demand is required before breach may be asserted is an issue which must be decided even if the court dismissed the counterclaim.

Finally, the court notes that the counterclaim may be viewed as a claim for an accounting upon termination of the contract: Plaintiff filed this lawsuit to determine the liability of the defendant for termination of the agreements. Surely plaintiff cannot be asserting that it is inappropriate to determine plaintiff's liabilities under the same agreements. Failure to do so would deny defendant the opportunity to assert claims in the nature of compulsory counterclaims under Rule 13. The defendant's fourth counterclaim is not dismissed.

### F. Fifth Counterclaim (Breach of the Implied Warranty of Workmanlike Performance)

For its fifth counterclaim, defendant asserts a breach of an implied warranty of

workmanlike performance. The parties agree that the contract at issue contains an express term requiring performance of the agreement in a workmanlike manner. Plaintiff argues that the law of Kansas will not imply a warranty where the subject matter of the warranty is covered by the express terms of the contract. Defendant argues that Kansas law allows assertion of a breach of an implied warranty even though the agreement contains an express warranty to the same effect.

 Kansas law implies a warranty of workmanlike performance in every service contract where there is no express term provided. *See, e.g. Crabb v. Swindler*, 184 Kan. 501, 505, 337 P.2d 986, 989 (1959). However, implied terms of a contract are not favored, and courts will not imply terms where the contract expressly covers the subject of the term to be implied. *See Connolly v. Samuelson*, 671 F.Supp. 1312, 1318 (D.Kan.1987).

The case cited by the defendant in support of allowing both implied and express warranty claims refers to an implied warranty **"in the absence of an express provision."** *Hennes Erecting Co. v. National Union Fire Ins. Co.*, 813 F.2d 1074, 1078 (10th Cir.1987); *accord Crabb*, 184 Kan. at 505, 337 P.2d at 989 ("in the absence of express agreement"); *and Belger Cartage Serv., Inc. v. Holland Const. Co.*, 224 Kan. 320, 333, 582 P.2d 1111, 1122 (1978) ("without an express warranty") (*quoting Gilley v. Farmer*, 207 Kan. 536, Syl. ¶ 3, 485 P.2d 1284, 1285 (1971)).

In *Hennes Erecting Co.*, the erecting company (Hennes) was contracted to install a turbine generator in a public utility power plant. Hennes was individually insured by the St. Paul Fire & Marine Insurance Co. (St.Paul) and was an additional insured on a builder's risk policy issued to the utility by National Union Fire Insurance Co. (National Union). *See Hennes*, 813 F.2d at 1075–76. The National Union policy did not cover loss covered by a warranty, expressed or implied. Hennes negligently installed the turbine in viola-

tion of its warranty of workmanlike performance. *See id.* at 1077–78. A loss to Hennes of $221,075.24 resulted when the turbine failed during testing. St. Paul paid the claim and sued National Union in subrogation alleging National Union's duty to Hennes as an additional insured on the builder's risk policy. *See id.* at 1075–78.

On appeal, National Union argued that the damages to Hennes were excluded because the loss was covered by express **and** implied warranties of workmanlike performance made by Hennes to the utility. *See id.* at 1078. The court stated, "[The] warranty to perform in a workmanlike and reasonable manner is specified in the contract." *Hennes*, 813 F.2d at 1078. The court noted that "an implied warranty exists **in the absence of an express provision** concerning workmanship." *Id.* (emphasis added). The court found coverage was excluded under the National Union policy because Hennes's negligence was "a breach of the **express warranty** to perform in a workmanlike and reasonable manner." *Id.* at 1081 (emphasis added). St. Paul countered that there was no warranty during the test run of the turbine because the express warranty "applied only after the project had been finally accepted." *Id.* The court rejected that argument and stated, "[T]he law would imply a warranty to perform in a workmanlike manner during construction and performance testing **even if** St. Paul was correct." *Id.* (emphasis added). That court did not allow National Union to recover based upon both an express and an implied warranty. Rather, the court based its ruling upon the express warranty and only mentioned as an alternative that, if it were wrong about the express warranty, the law would imply a warranty.

Defendant's reliance upon *Scott v. Strickland*, 10 Kan.App.2d 14, 691 P.2d 45 (1984), is also flawed. In *Scott*, the plaintiff was allowed to assert "alternative claims for breach of the express contract and for breach of the implied warranty of workmanlike performance." *Id.* at 18, 691

P.2d at 50. However, in *Scott* the subject matter of the express term at issue was not a warranty of workmanlike performance. The express contract was to complete the work "according to the blueprints for a certain price." *Id.* The express term does not address workmanlike performance. *Scott* did not concern, therefore, whether a claimant may assert identical express and implied warranties of workmanlike performance.

As a matter of law defendant may not assert an implied warranty of workmanlike performance because the agreements include an express warranty of workmanlike performance. Defendant's fifth counterclaim is dismissed for failure to state a claim upon which relief may be granted.

## IV. Summary of the Court's Ruling

IT IS ORDERED THAT defendant's motion for leave to file amended counterclaims (Doc. 25) is granted. The clerk shall cause the proposed amended counterclaims, attachment B to defendants motion, to be filed in this case.

IT IS FURTHER ORDERED THAT plaintiff's motion to dismiss the counterclaims (Doc. 21) is denied in part, and granted in part. Defendant's fifth counterclaim for breach of the implied warranty of workmanlike performance, as amended, is dismissed for failure to state a claim upon which relief may be granted.