No. 54,399

STERLING S. WAGGENER, *Appellant and Cross-Appellee*, v. SEEVER SYSTEMS, INC., *Appellee and Cross-Appellant*.

(664 P.2d 813)

Opinion filed June 10, 1983.

*Douglas S. Wright,* of Sabatini, Waggener, Vincent & Arterburn, of Topeka, argued the cause and was on the brief for the appellant and cross-appellee.

*Gary D. McCallister,* of Davis, Unrein, Hummer & McCallister, of Topeka, argued the cause and was on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

LOCKETT, J.: Sterling Waggener is a practicing attorney in Topeka. Waggener and his secretary were interested in purchasing word processing equipment for use in the law office. They met with a sales representative of Seever Systems, Inc. The sales representative showed them the Savin 900 Word Master.

The salesman presented them with several options for purchasing used equipment or new equipment. Waggener then spoke to an attorney who had the Savin 900 Word Master in his office. After discussing the matter, Waggener determined to acquire new equipment. A lease agreement was signed obligating Waggener to pay the sum of $147.76 per month for a period of sixty months, commencing on the first day of the month following the installation of the equipment. The equipment was delivered and installed in Waggener's office July 26, 1978.

The Savin 900 Word Master equipment consists of an IBM Selectric typewriter with a base plate attached, and a separate console unit connected to the typewriter with an umbilical cord. Waggener's secretary received a four-hour training session at Seever's office prior to the installation of the equipment.

When the equipment was installed, it appeared to Waggener that the housing of the typewriter was neither the color specified nor was it new. Waggener wrote on the installation receipt that the housing was not new. Several complaints were made by Waggener and his secretary due to the condition of the typewriter housing to Seever's customer support representative. In the three weeks following the installation of the equipment, the typewriter malfunctioned. Seever's technicians were contacted and made six to eight service calls, repairing the machine on each call.

Shortly after the last service call on August 16, 1978, Waggener advised Seever's representatives that he was dissatisfied with the equipment and wanted to end the lease. The general manager for Seever Systems wrote to Waggener on August 18, 1978, and advised him that a negotiated settlement of the matter was possible and the equipment could be removed upon the receipt of payment by Mr. Waggener of $950.00 for the early termination of the agreement. Mr. Waggener did not accept this proposal. Negotiations continued between counsel for Seever Systems and Mr. Waggener. The machine was picked up by Seever Systems, Inc. in March, 1979, pursuant to an agreement between counsel for the "deinstallation" of the machine. After "deinstallation" Seever sold the machine as used and credited the proceeds of the sale to Waggener's account.

No payments were ever made by Mr. Waggener under the lease agreement. The equipment was used on a daily basis by

Mr. Waggener's secretary until March 9, 1979. Mr. Waggener's secretary never used the memory portion of the system throughout the entire time the machine was in Waggener's office.

Waggener filed suit against Seever alleging three violations of the Kansas Consumer Protection Act (K.S.A. 50-623 *et seq.*): (1) The defendant represented the property to be original or new when in fact it was used; (2) defendant intentionally failed to state a material fact that the equipment represented a discontinued line; and (3) the equipment was not usable in the normal course of the plaintiff's business.

Waggener requested a jury trial in his petition. Seever counterclaimed alleging Waggener breached the lease agreement by making no payments. Seever requested judgment for the amount due under the contract. Waggener, in the pretrial order, requested (1) damages or (2) rescission of the contract.

The court, on the morning of the trial, required Waggener to elect his remedy. Waggener was required to either affirm the contract and seek damages or rescind the contract and defend the counterclaim on that basis. The plaintiff elected the equitable remedy of rescission. The court ruled that a jury trial was not appropriate since Waggener's claim was for rescission and further, that the statutory scheme of the Consumer Protection Act does not provide for a jury trial. The matter was tried to the court. The court entered judgment for Seever on both the plaintiff's petition and Seever's counterclaim. The court denied Seever's request for attorney fees contained in its counterclaim. Waggener appeals from the judgment. Seever cross-appeals from the denial of attorney fees.

Waggener claims that the court erred in concluding a deceptive act alleged under the Kansas Consumer Protection Act is a question of law tried only to a judge. The trial judge in his Memorandum of Decision and Judgment stated in part:

"This action was commenced under the Kansas Consumer Protection Act KSA 50-623 et seq. Plaintiff contends that the defendant engaged in three separate deceptive acts as defined in KSA 50-626 (b). The Court has previously determined in this case that a deceptive act, like an unconscionable act is a question of law for the Court. *State ex rel. Miller v. Midwest Service Bureau,* 229 Kan. 322, 324, [623 P.2d 1343] (1981). There is no provision in this statutory cause of action for trial by jury and the Court has heretofore concluded that plaintiff's claim should be tried to the Court. *Koerner v. Custom Components,* 4 Kan. App. 2d 113, 603 P.2d 628 (1979); *Karnes Enterprises, Inc. v. [Quan],* 221 Kan. 596, 561 P.2d 825 (1977). Defendant made no demand for jury trial on its counterclaim."

There is no due process right to a jury trial in a state court civil action. This is true because the due process clause of the Fourteenth Amendment to the Constitution of the United States does not apply to a jury trial in a civil proceeding in a state court. A trial by jury in suits at common law in state courts is not a privilege or immunity of national citizenship which the states are forbidden by the Fourteenth Amendment to abridge. See *First Nat'l Bank of Olathe v. Clark,* 226 Kan. 619, 622, 602 P.2d 1299 (1979).

The constitutions of the states generally contain express guaranties of the right to a jury trial. The public policy of the state with respect to jury trials is determined by its own constitution. Section 5 of the Bill of Rights of the Constitution of the State of Kansas states:

"**Trial by jury.** The right of trial by jury shall be inviolate."

K.S.A. 60-238(*a*) provides:

"The right of trial by jury as declared by section 5 of the bill of rights in the Kansas constitution, and as given by a statute of the state shall be preserved to the parties inviolate."

The right to a jury trial in a civil proceeding in Kansas is not absolute. This court has in many decisions interpreted the constitutional and statutory provisions and established certain general principles to be followed by the courts in determining whether a party litigant is entitled to a jury trial. Justice Prager set forth the guiding principles in *Karnes Enterprises, Inc. v. Quan,* 221 Kan. 596, 600-01, 561 P.2d 825 (1977). Those guiding principles are:

"(1) The right of trial by jury is a substantial and valuable right. The law favors trial by jury and the right should be carefully guarded against infringement. (*Bourne v. Atchison, T. & S. F. Rly. Co.,* 209 Kan. 511, 497 P.2d 110.)

"(2) The constitutional right to a jury trial guaranteed by Section 5 of the Bill of Rights of the Constitution of the State of Kansas refers to that right as it existed at common law. (*Craig v. Hamilton,* 213 Kan. 665, 518 P.2d 539; *Hasty v. Pierpont,* 146 Kan. 517, 72 P.2d 69.) Judge Spencer A. Gard in Kansas Code of Civil Procedure, § 60-238, in discussing the repeal of former statute G.S. 1949, 60-2903 and in analyzing K.S.A. 60-238 states as follows:

" 'There is now no general statute defining what issues are triable to a jury as a matter of right and which are not. That question is determinable on the basis of common law tradition as preserved by the Kansas Constitution, section 5 of the Bill of Rights. See Hasty v. Pierpont, 146 K 517, 72 P 2d 69, which discusses the basic principle that under the common law a party was entitled to a jury if the

case was based on legal principles as distinguished from actions in equity. Kansas jurisprudence does not seem to have suffered any loss by the repeal of former section 60-2903.'

"(3) At common law and under the Kansas constitutional provision in a suit in equity a party is not entitled to a trial by jury as a matter of right. (*Spena v. Goffe*, 119 Kan. 831, 241 Pac. 257.)

"(4) In determining whether an action is one in equity the test is whether the essential nature of the action is grounded on equitable rights and is one in which equitable relief is sought. (*Akins v. Holmes*, 89 Kan. 812, 133 Pac. 849; *Houston v. Goemann*, 99 Kan. 438, 162 Pac. 271; *Hasty v. Pierpont*, supra; *Sutherland v. Sutherland*, 187 Kan. 599, 358 P.2d 776; *Hindman v. Shepard*, 205 Kan. 207, 468 P.2d 103.)

"(5) The issues raised by the pleadings or as modified by the pretrial order determine the nature of the action, and where the issue is not one justiciable at common law, a jury trial is not available. (*Craig v. Hamilton*, supra.)

"Prior to the adoption of our present code of civil procedure whether or not a party was entitled to a jury trial was determined exclusively from the pleadings. (*Estey v. Holdren*, 126 Kan. 385, 267 Pac. 1098; *Hasty v. Pierpont*, supra; *McCalester v. National Reserve Life Ins. Co.*, 151 Kan. 378, 99 P.2d 758; *Nusz v. Nusz*, 155 Kan. 699, 127 P.2d 441; *City of Osawatomie v. Slayman*, 182 Kan. 770, 323 P.2d 910; *Sutherland v. Sutherland*, supra.) The rule which required a consideration of the pleadings alone was appropriate under our former code of civil procedure where the plaintiff was required to plead in his petition all of the facts constituting his cause of action. Under our present code of civil procedure which requires only 'notice' or 'claim' pleading, the former rule is not as workable from a practical standpoint. This was recognized in *Craig v. Hamilton*, supra. The rule to be applied today should be one which permits the parties to complete their discovery so that the basic issues involved in the case can be clarified and the essential nature of the action determined at a pretrial conference. It is at that stage of the litigation that the trial court should determine the issue whether a party is entitled to trial by jury as a matter of right.

"(6) The substance of the pleadings, not the form of the pleadings, determines the character of an action as equitable or legal in nature. (*Estey v. Holdren*, supra; *Russell v. Bovard*, 153 Kan. 729, 113 P.2d 1064; *Cloonan v. Goodrich*, 161 Kan. 280, 167 P.2d 303; *City of Osawatomie v. Slayman*, supra.) The fact that the plaintiff prays for a money judgment only is not controlling where the action is essentially one in equity. (*Sipe v. Taylor*, 133 Kan. 449, 300 Pac. 1076.)

"(7) Where a court of equity obtains jurisdiction of an action for the purpose of granting some distinctively equitable relief, the court will take jurisdiction for all purposes and determine all issues in the case so that a full, effective, and determinative decree adjusting the rights of the parties may be entered and enforced. (*Seibert and Lykins v. Thompson*, 8 Kan. 65; *Martin v. Martin*, 44 Kan. 295, 24 Pac. 418; *Sanders v. Visser*, 165 Kan. 336, 194 P.2d 511; *Place v. Place*, 207 Kan. 734, 486 P.2d 1354.)"

First let us examine K.S.A. 50-627(*a*) and (*b*) which state in part:

"No supplier shall engage in any unconscionable act or practice in connection

with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction.

"The unconscionability of an act or practice is a question for the court. In determining whether an act or practice is unconscionable, *the court shall consider circumstances of which the supplier knew or had reason to know*, such as, but not limited to the following . . . ." Emphasis supplied.

Most states regulate the right to a civil jury proceeding by constitution, statute, and case law. A statute may specifically allow or deny the right to a civil jury. State statutes relating to civil juries and jury trials are subject to the state constitutional provisions. As a general rule, the right to a jury trial may be denied in certain proceedings that are purely statutory.

Whether or not an act is unconscionable, and therefore violates the Kansas Consumer Protection Act, is a question for the court and not a jury pursuant to K.S.A. 50-627(*b*). The trial court was correct when it stated that one is not entitled to a jury trial when the petition claims an unconscionable act under K.S.A. 50-627.

The trial court was in error when it ruled that a deceptive act (K.S.A. 50-626), like an unconscionable act, is a question of law for the court. The legislature did not declare that a deceptive act or practice is a question for the court as it stated for unconscionable acts and practices in K.S.A. 50-627. There is a historical justification for the distinction between unconscionability and deception. The doctrine of unconscionability has its origins in equity:

"For at least two hundred years equity courts have refused to grant specific enforcement of, or have rescinded, contracts so unconscionable 'as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" White and Summers, *Uniform Commercial Code* § 4-2 (2d ed. 1980).

Actions that claim a deceptive act or practice follow the general rule in determining whether there is a right to a jury trial. The general rule is that the right to a jury trial in civil actions extends only to such actions or proceedings as existed at common law. It is the nature of the action that determines whether the issue is one justiciable at common law with a right to a jury trial or an action in equity where a party is not entitled to a jury trial. The trial court was incorrect when it stated there is no right to a jury trial for a deceptive act or practice for an alleged violation of K.S.A. 50-626.

The second question raised is whether the issue presented and

the relief claimed entitled the plaintiff to a jury trial. Waggener first claimed damages and requested a jury trial in the petition. At the pretrial Waggener requested either damages or rescission of the contract. Prior to trial the court required Waggener to elect his remedy, either damages or rescission. A person fraudulently induced to buy and pay for property delivered to him has two remedies. He may affirm the contract and sue for damages or he may disaffirm the contract and sue for rescission. See *Nordstrom v. Miller*, 227 Kan. 59, Syl. ¶ 11, 605 P.2d 545 (1980). If he affirms, he keeps the property, the seller keeps the consideration paid, and the buyer recovers damages for the difference in value between what he received and what he should have received. If he disaffirms, he seeks restoration of the status existing before the sale was completed. Because the remedy by way of damages rests on affirmance, and the remedy by way of rescission rests on disaffirmance, the two are inconsistent and incompatible. Resort to one excludes a party from resorting to the other, and in choosing a remedy it is that decision that determines the party's right to a jury trial.

If Waggener had affirmed the contract and requested damages, he would have been guaranteed by Section 5 of the Bill of Rights of the Constitution of the State of Kansas a jury trial since the remedy existed at common law. Waggener chose to disaffirm and rescind the contract. Rescission is a suit in equity and a party is not entitled to a jury trial as a matter of right. When Waggener modified his claim from affirmance to rescission, the issue was not one justiciable at common law; a jury trial was not available. The trial court was correct in denying Waggener a jury trial; the judgment will not be disturbed merely because the wrong reason was given for its rendition.

Waggener next claims the court erred in its findings of fact when it determined (1) Seever did not misrepresent that the equipment was new; (2) Seever did not fail to state a material fact in not disclosing the line of equipment sold to Waggener was to be discontinued; and (3) that the equipment sold was usable in the normal course of Waggener's business.

The trial court determined that Seever did not materially misrepresent the equipment sold was new. The trial court stated:

"It is the Court's view that a determination of whether or not Seever violated 50-626(b)(1)(C) turns on the fact question of whether or not the failure to provide

a new typewriter cover along with the other equipment is a *material deviation* from the representations made at the time of sale. A typewriter cover has nothing to do with the operation or performance of the equipment which was the center of the transaction. While Waggener noted upon delivery that the cover was not new, he made no specific demand for a new cover during the 27 day period between July 26 and August 23, 1978. There is no evidence that the cover affected the mechanical operation of the equipment.

"The Court concludes that Waggener was furnished new equipment except for the typewriter cover. I find that a typewriter cover is not a material component in a word master word processing system in terms of function or cost. It is a defect which could have been quickly corrected had a specific demand been made. Furnishing a used cover therefore does not materially alter the representation of the product or its newness in this case. Plaintiff's cause of action under KSA 50-626(b)(1)(C) must fail in accordance with the foregoing."

K.S.A. 50-626(*b*)(1)(C) provides:

"(*b*) Deceptive acts and practices include . . .
"(1) Representations made knowingly or with reason to know that:

. . . .
"(C) property is original or new, if such property has been deteriorated, altered, reconditioned, repossessed or is second-hand or otherwise used to an extent that is materially different from the representation."

There was evidence to support the court's determination that the equipment was new. Several witnesses for Seever testified that the equipment was new. The trial court found the typewriter cover (housing) was not new, but the cover was not a material component in the system.

Waggener argues Seever failed to state a material fact in not disclosing the line of equipment sold to him was to be discontinued. Waggener contends this violated K.S.A. 50-626(*b*)(3):

"[T]he intentional failure to state a material fact or the intentional concealment, suppression or omission of a material fact, whether or not any person has in fact been misled."

The trial court determined Seever did not have knowledge the line of equipment would be discontinued when it was sold to the appellant. The court also determined the discontinuing of the equipment was not a material fact. Larry Seever testified he received official word of the discontinuation in December of 1978, although he heard rumors earlier than this. As to materiality, a fact is material if it is one to which a reasonable person would attach importance in determining the choice of action in the transaction involved. *Griffith v. Byers Construction Co.*, 212 Kan. 65, 73, 510 P.2d 198 (1973); *Timi v. Prescott State Bank,*

220 Kan. 377, Syl. ¶ 7, 553 P.2d 315 (1976). A major factor supporting the trial court's decision is that the discontinuation apparently did not affect the availability of parts or the servicing of the equipment.

Waggener asserts Seever violated K.S.A. 50-626(b)(1)(A) when it stated the equipment was usable in the normal course of the appellant's business. K.S.A. 50-626(b)(1)(A) provides deceptive acts and practices include representations knowingly made that:

"Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have."

The trial court found the equipment's malfunctions were not serious and that the equipment was suitable for use in a law office. Larry Seever testified the problems with the equipment were superficial, and the high number of service calls was not unusual.

In reviewing the findings to determine if they are supported by substantial evidence, a reviewing court considers the evidence favorable to the successful party. If there is substantial evidence to support the findings it is of no consequence that there may have been contrary evidence adduced which, if believed, would have supported a different finding. *Farmers State Bank of Ingalls v. Conrardy,* 215 Kan. 334, Syl. ¶ 1, 524 P.2d 690 (1974). A reviewing court does not pass on the credibility of witnesses or the truth of their testimony. Substantial evidence means evidence possessing something of substance and relevant consequence, and which furnishes substantial basis of fact from which the issues can reasonably be resolved. *Mann v. Good,* 202 Kan. 631, Syl. ¶ 2, 451 P.2d 233 (1969). There was substantial evidence to support the trial court's findings in this case.

Seever appeals the denial of attorney fees requested pursuant to K.S.A. 1982 Supp. 50-634(e), which provides in part:

"Except for services performed by the office of the attorney general or the office of a county or district attorney, the court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed if:

"(1) The consumer complaining of the act or practice that violates this act has brought or maintained an action he or she knew to be groundless and the prevailing party is the supplier; or a supplier has committed an act or practice that violates this act and the prevailing party is the consumer."

Seever contends that Waggener knew the action to be groundless when brought.

Waggener was correct in his claims that the typewriter housing was not new, the equipment did malfunction, and the line of equipment was discontinued. The trial court, after hearing the evidence, determined that Waggener did not bring an action he knew to be groundless; therefore, Seever was not entitled to attorney fees. The trial court's denial of attorney fees was correct.

Judgment is affirmed.