No. 60,956

JUDY A. HOFFMAN, *Appellant*, v. LAMBERT HAUG, *Appellee*.

(752 P.2d 124)

Opinion filed March 25, 1988.

*Keith R. Henry*, of Weary, Davis, Henry, Struebing & Troup, of Junction City, argued the cause and *Steven L. Opat*, of Junction City, was with him on the brief for appellant.

*Max M. Hinkle*, of Lehman, Guilfoyle & Hinkle, of Abilene, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a civil action by Judy Hoffman against realtor Lambert Haug for fraud and violation of the Kansas Consumer Protection Act (KCPA).

The evidence disclosed that Gene and Rebecca Mooney bought a house in Abilene from Railroad Savings & Loan on March 18, 1981. Appellant Lambert Haug was the sales agent for Railroad. Haug was also an insurance agent for the Marysville Mutual Insurance Company, which insured the house.

On March 19, 1981, Kenneth Cain, Abilene's city inspector,

inspected the gas furnace prior to its lighting. Cain noticed the natural gas line was buried under a portion of the house. This would have been a violation of the city building code had the house not been built prior to the code date. There was danger of gas building up beneath the house and causing an explosion. Cain also observed the electrical entrance mast above the house was bent, which might in time expose live wires, creating a fire hazard.

Despite these observations, Cain gave permission to light the furnace and tagged the meter to indicate to Kansas Power & Light (KP&L) the gas could be turned on. He informed both the KP&L gas foreman, Darrel Taylor, and the realtor, Haug, of the hazards. However, he did not require that the defects be repaired. Haug told him he would advise the new owners of the hazards.

Haug did not, however, tell the Mooneys, Railroad Savings & Loan, or Marysville Mutual about the defects. Benjamin Mosier, underwriter for Marysville, testified the company relied on its insurance agents for property inspection to decide whether to issue a policy. Mosier testified Marysville Mutual would not have insured this house had the defects been known to it.

The Mooneys soon moved to Missouri. They listed the house for sale with Haug. When no buyers were found, Railroad took the house back. Haug then listed the house for Railroad.

In July of 1982, Rosemary McDonald, a salesperson for Haug Realty, sold the house to Judy Hoffman. Railroad carried back a portion of the purchase price. Hoffman purchased home insurance from Marysville Mutual. Hoffman was never apprised of the defects by either McDonald or Haug. Neither Railroad nor Marysville Mutual knew of the hazards. Upon taking possession, Hoffman had the utilities turned on.

Hoffman lived in the house until July of 1984, when she moved to Wamego. She rented the house to a girlfriend, who paid a monthly rental which equaled the amount Hoffman was required to pay Railroad.

In December the girlfriend moved and Hoffman had KP&L shut off the gas and electricity. The house was vacant while Hoffman continued to make payments to Railroad. On May 15, 1985, she requested KP&L to turn the electricity on because she

was planning to rent the house and wanted to make some repairs to the bathroom floor. As of that date, she had spent $968.95 on general repairs to the house.

The next weekend, Hoffman and her husband traveled to Abilene to look at the house and discovered the electricity had not yet been turned on. Hoffman called KP&L the next day, May 27, 1985, and asked why the lights had not been turned on. KP&L informed her neither the electricity nor the gas would be turned on until the hazards were remedied.

For the next six months after her discovery of the hazards, Hoffman made numerous attempts to have either Haug or Railroad repair the defects. Railroad finally made the repairs in November and December of 1985.

After the repairs were made, Hoffman did not have the gas and electricity turned on, nor did she attempt to rent or sell the house. On June 4, 1986, she filed suit against Railroad and Haug for damages caused by Haug's concealment of the hazards. Hoffman agreed to dismiss Railroad from the suit following cancellation of the contract for the house. She had made all payments due on the house and she received nothing from Railroad for cancellation of the contract except the return of a portion of her prepaid taxes. She had spent an additional $861.42 in general repairs to the house from the date she found out about the hazards to the time she gave up the house. None of the repairs were related to the hazards.

The trial court granted Haug's motion to dismiss Hoffman's claim of fraud finding that, although there may have been an act of omission on the part of Haug, Hoffman suffered no detriment as a proximate result. The court allowed Hoffman to go to trial with respect to her claim of a deceptive act or practice by Haug under the Kansas Consumer Protection Act, specifically K.S.A. 50-626(b)(3). After Hoffman's presentation of evidence at trial before the court sitting without a jury, Haug moved for a dismissal of Hoffman's claim for actual damages. The court sustained the motion and then dismissed, *sua sponte,* Hoffman's entire action against Haug, including her claims for civil penalties and attorney fees. Hoffman appeals.

The first issue is whether the trial court erred in dismissing Hoffman's claim of fraud prior to trial. Hoffman alleged in her

petition that Haug fraudulently concealed the defects from her, an allegation Haug denied. Haug moved to dismiss the petition pursuant to K.S.A. 60-212(b)(6) for failure to state a claim upon which relief could be granted. He presented evidence obtained during discovery to support his motion that Hoffman's claims for damages were based on repairs unrelated to the defects and were based only on the differential between the rental value of the house and the contract payments she made. The court sustained Haug's motion, holding Hoffman suffered no damages under common-law fraud. The court considered evidence outside the scope of the pleadings and therefore Haug's motion to dismiss was treated as a motion for summary judgment. K.S.A. 60-212(c); *Bethany Medical Center v. Knox,* 10 Kan. App. 2d 192, 193, 694 P.2d 1331 (1985). We will so consider it on appeal.

The scope of appellate review on a motion for summary judgment requires all issues of material fact to be resolved in favor of the party against whom the judgment is sought. We must therefore assume Haug did commit fraud against Hoffman in failing to inform her of the defects. *Barnhart v. McKinney,* 235 Kan. 511, 516, 682 P.2d 112 (1984). Haug therefore would be subject to liability, based on fraudulent concealment of a defect, for the financial loss to Hoffman caused by her lack of knowledge of the defect. See *U.S.D. No. 490 v. Celotex Corp.,* 6 Kan. App. 2d 346, 629 P.2d 196, *rev. denied* 230 Kan. 819 (1981).

In *NL Industries, Inc. v. Gulf & Western Industries,* 650 F. Supp. 1115, 1129 (D. Kan. 1986), the court held a manufacturer's allegation that it would not have entered into a contract had it known the supplier was bribing its manager stated a cause of action for fraud under Kansas law. A party who has suffered damage by reason of fraudulent concealment of another has the option to either rescind the contract or affirm the contract and recover the damages suffered as a consequence of the fraud. *Shirk v. Shirk,* 186 Kan. 32, 35-36, 348 P.2d 840 (1960). See *Waggener v. Seever Systems, Inc.,* 233 Kan. 517, 523, 664 P.2d 813 (1983).

Haug concedes that, had Hoffman elected to rescind the contract with Railroad upon becoming aware of an undisclosed material defect, she would have been entitled to recover the cost of unrelated repairs made up to that time, but claims that, when

Hoffman continued to make payments and demanded repair of the hazards, she affirmed the contract. See *Moore v. Farm & Ranch Life Ins. Co.*, 211 Kan. 10, 17-18, 505 P.2d 666 (1973). Haug claims Hoffman reaffirmed the contract when she made further general repairs to the house and accepted the repairs Railroad made on the hazards. Haug then concludes that when Hoffman surrendered the repaired house to Railroad and accepted cancellation of the contract, she acknowledged herself to have been fully reimbursed.

Cancellation of a contract is far different in effect from rescission. Rescission is the undoing of a contract from its beginning while cancellation is the interruption and termination of the contract by agreement at a time subsequent to its inception. Under rescission, Hoffman would be entitled to be restored to the position she held prior to the contract. This was not done and Hoffman is not entitled to it. Thus, we shall consider this case as one where the plaintiff affirmed the contract and sued a third party for fraud. The subsequent cancellation of the contract is irrelevant to this action.

There is no similar case in Kansas, but in *Kuechle v. Springer*, 145 Ill. App. 127, 137 (1908), the Illinois court held the cancellation of a contract between two parties did not prevent a plaintiff from suing a third party for damages perpetrated by the fraud. In support of her damage claim against Haug, Hoffman argues she would not have bought the house had she known of the concealed hazards, and that Haug, who concealed them, was liable for all expenses she incurred over the cost of rent. She asserts the $1,830.37 worth of repairs would not have been made to a rental house. She also claims the difference between what she paid Railroad under her contract of purchase and the fair rental value during that time was $1,214.40, and that Haug is liable for that loss. Haug argues such a differential was not caused by the hazards, but was a result of the value judgment made by Hoffman when she decided to buy a house rather than rent.

Haug points out Hoffman introduced no evidence of the fair rental value of the property and that her friend who rented the house paid as rent the Railroad payments, showing no differential. However, for purposes of appellate review of summary

judgment, we must accept her evidence in the light most favorable to her. The problem is that the repairs for which reimbursement is asked have no relationship to the alleged fraud and there is no evidence of differential damages, even when we give the evidence favorable treatment.

A purchaser who has been defrauded by false representations regarding the property bought may recover as damages the difference between the actual value of the property at the time of sale and the value the property would have had if the representations had been true. *Fisher v. Mr. Harold's Hair Lab, Inc.,* 215 Kan. 515, 527, 527 P.2d 1026 (1974); *K-B Trucking Co. v. Riss Intern. Corp.,* 763 F.2d 1148 (10th Cir. 1985). In this case the difference between its actual value and the value of the property if the defects were not present is the amount of money required to repair the defects. As this amount was paid by Railroad, Hoffman was not damaged. It is a fundamental principle of law that a cause of action in fraud lies only if the plaintiff was injured by the fraud. 37 Am. Jur. 2d, Fraud and Deceit § 283, pp. 377-78. Thus, this issue is without merit.

The next issue is whether the court erred in dismissing Hoffman's action under the KCPA. The trial court dismissed Hoffman's cause of action against Haug under the KCPA on the theory there was no evidence of a deceptive act or practice.

Under the KCPA, a consumer may recover actual damages, or civil penalties, if the court in its discretion finds civil penalties are warranted. K.S.A. 50-634(b); K.S.A. 50-636(a); see *Bell v. Kent-Brown Chevrolet Co.,* 1 Kan. App. 2d 131, 134-35, 561 P.2d 907 (1977). One of the purposes of the KCPA is "to protect consumers from suppliers who commit deceptive and unconscionable practices." K.S.A. 50-623(b). The Act is to be construed liberally in order to promote this purpose. *Stair v. Gaylord,* 232 Kan. 765, 775, 659 P.2d 178 (1983).

A "consumer" is defined under the Act as "an individual who seeks or acquires property or services for personal, family, household, business or agricultural purposes." A "supplier" is defined as "a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who in the ordinary course of business solicits, engages in or enforces consumer transactions whether or not dealing directly with the consumer." K.S.A. 50-624(i). Hoff-

man fits the definition of a consumer under the Act, and Haug of a supplier. Their interaction also fits the Act's definition of a "consumer transaction" as "a sale, lease, assignment or other disposition for value of property or services within this state . . . to a consumer or a solicitation by a supplier with respect to any of these dispositions." K.S.A. 50-624(c). K.S.A. 50-626(a) states: "No supplier shall engage in any deceptive act or practice in connection with a consumer transaction." We hold this transaction was covered by the Consumer Protection Act.

In the case at bar, the trial court dismissed Hoffman's claims for civil penalties and attorney fees for failure to prove damages or a deceptive act or practice. It is within the court's discretion to deny civil penalties. Appellee concedes actual damages are not required for a plaintiff to be awarded civil penalties under the Act. See K.S.A. 50-634(b); K.S.A. 50-636(a); *Manley v. Wichita Business College*, 237 Kan. 427, 439, 701 P.2d 893 (1985).

A re-examination of the evidence of damages reveals the trial court was correct in holding Hoffman had shown no proof of damages under the KCPA any more than she had under common-law fraud. She could therefore recover under the KCPA only if she proved a deceptive practice which the trial court in its discretion found would justify an assessment of a civil penalty.

K.S.A. 50-626 prohibits a supplier from engaging in deceptive acts and practices, which include "the intentional failure to state a material fact, or the intentional concealment, suppression or omission of a material fact, whether or not any person has in fact been misled." K.S.A. 50-626(b)(3). Here, the evidence was uncontradicted that Mr. Haug failed to disclose the defective electrical mast and the hazardous gas line installation to Hoffman. The trial court, in its discretion, ruled Haug's omission was not a deceptive act or practice. The test on appellate review of whether the trial court abused its discretion is whether no reasonable person would agree with the trial court. If any reasonable person would agree, appellate courts will not disturb the trial court's decision.

In this case the electrical mast was not hidden. It was available for all to see who cared to look. Thus, though subject to criticism for safety, it was not an intentional concealment or omission. On the other hand, the placement of the natural gas line requires a

more careful analysis. It was hidden underground, carried an explosive substance, and ran under a portion of the house. Mr. Haug was apprised of this information by Mr. Cain, the city inspector. However, Mr. Cain testified the ordinance providing houses not be constructed over gas lines had a grandfather clause which applied to this house, and he allowed the gas to be turned on. Thus, we can see reasonable persons could differ as to whether Haug had a duty to speak about this fact. The trial court did not abuse its discretion.

The judgment of the trial court is affirmed.