**Colleen UDELL and Jack Udell, Plaintiffs,**

v.

**KANSAS COUNSELORS, INC., Defendant.**

**No. 03–2412–JWL.**

United States District Court, D. Kansas.

April 12, 2004.

David M. Bryan, Kansas City, MO, for Plaintiffs.

Michael A. Klutho, Bassford Remele, A Professional Association, Minneapolis, MN, John G. Schultz, Franke, Schultz & Mullen, PC, Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This lawsuit arises from the debt collection practices of defendant Kansas Counselors, Inc. ("KCI") in attempting to collect debts from plaintiffs Colleen and Jack Udell. Plaintiffs assert claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692o ("FDCPA"), and the Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50–623 to 50–644 ("KCPA"). The matter is presently before the court on KCI's motion for summary judgment (Doc. 10). In plaintiffs' response to KCI's motion for summary judgment, plaintiffs also moved for summary judgment (Doc. 16). For the reasons explained below, the court will grant KCI's motion in its entirety and deny plaintiffs' motion.

### STATEMENT OF MATERIAL FACTS[1]

Beginning in July of 2001, several of plaintiffs' debts were assigned to KCI for

---

1. In plaintiffs' response to KCI's statement of fact paragraph numbers 5, 6, 9, 14, and 15, plaintiffs state they deny these statements of fact. D. Kan. Rule 56.1, however, requires plaintiffs to cite to evidence in the record controverting these statements of fact. Because plaintiffs did not point to any such evidence, the court accepts these statements of fact as true for the purpose of deciding the parties' motions for summary judgment. *See* D. Kan. Rule 56.1(a) ("All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.").

collection. KCI attempted to collect those debts by sending letters and calling plaintiffs' residence. On March 21, 2003, plaintiffs sent a letter to KCI that referenced "All Accounts." The letter directed KCI to "CEASE AND DESIST all attempts to collect the above debt" (emphasis in original). When KCI received this letter from plaintiffs, KCI immediately ceased communicating with plaintiffs. KCI assigned plaintiffs' accounts a unique status code to prevent further collection calls or letters to plaintiffs. Thereafter, KCI did not contact plaintiffs regarding the accounts that predated the cease-and-desist letter.

On May 2, 2003, three more of plaintiffs' accounts were assigned to KCI for collection. Those accounts appeared to be new debts because the balances and/or dates of service for these three new debts were different than those on the accounts that predated plaintiffs' cease-and-desist letter. On May 2, 2003, KCI sent plaintiffs a validation-of-debt statement and a first collection notice for these three new accounts. On May 7 and 8, 2003, KCI placed automated telephone calls to plaintiffs' residence regarding these debts. Plaintiffs' complaint alleges that no one at plaintiffs' home answered the calls and no messages were left.

On May 13, 2003, two more of plaintiffs' accounts were placed with KCI for collection. Again, these debts appeared to be new ones because the balances and/or dates of service were different than prior debts that had been placed with KCI. On May 13, 2003, KCI sent a validation-of-debt statement and a first collection notice for these two new accounts. On May 12 and 13, 2003, KCI placed automated tele-phone calls to plaintiffs' residence regarding collecting on the five new accounts that had been placed with KCI since March 21, 2003. Again, plaintiffs' complaint alleges that no one at plaintiffs' home answered the calls and no messages were left.

Subsequently, KCI received a letter from attorney David Bryan dated May 13, 2003. In that letter, Mr. Bryan alleged that KCI's four telephone calls to plaintiffs in May of 2003 violated the FDCPA because plaintiffs had previously requested that KCI cease communications with them. The letter did not specify the accounts for which Mr. Bryan was representing plaintiffs.

When KCI received Mr. Bryan's May 13 letter, KCI placed a "no communication" status code on each of plaintiffs' accounts, including the five new accounts that were placed with KCI in May. KCI also responded to Mr. Bryan in a letter dated May 19, 2003. In that letter, KCI stated that it did not violate the FDCPA because KCI's attempted communications with plaintiffs in May of 2003 concerned the five accounts that were assigned to KCI after March 21, 2003. Since May 19, 2003, KCI has not communicated or attempted to communicate with plaintiffs regarding the five new accounts that were assigned to KCI in May of 2003.

On May 20, 2003, Mr. Bryan sent another letter to KCI. The letter stated: "Because [plaintiffs' March 21, 2003, cease-and-desist] letter states that you were not to contact them in reference to 'all accounts' you may have had, under the FDCPA it does not matter what accounts you were calling them about, nor does it

Also, plaintiffs' statement of additional uncontroverted fact paragraph numbers 2 and 3 do not support the facts alleged. In these paragraphs, plaintiffs are asking the court to draw inferences from Mr. Bryan's May 20, 2003, letter to KCI. The court will confine its statement of material facts to reciting facts that are supported by the record. The court will discuss any reasonable inferences that can be drawn from those facts in its analysis of the merits of the parties' motions.

matter when you received the accounts for collection." Again, the letter was silent regarding the specific accounts for which Mr. Bryan was representing plaintiffs.

In June, July, and August of 2003, several new accounts were placed with KCI for collection from plaintiffs. KCI has communicated with plaintiffs regarding those new accounts.

Plaintiffs' complaint alleges that KCI violated the FDCPA, specifically 15 U.S.C. § 1692c(c), by continuing to communicate with plaintiffs after receiving plaintiffs' cease-and-desist letter. *See* Compl. (Doc. 1) at 4. The complaint also alleges that KCI violated the FDCPA, specifically 15 U.S.C. § 1692d(6), by telephoning plaintiffs on May 7, 8, 12, and 13. Compl. at 4. Lastly, the complaint alleges that KCI's written communications and telephone calls after May of 2003 amounted to deceptive and unconscionable conduct in violation of the KCPA, specifically Kan. Stat. Ann. §§ 50–626 and 50–627. Compl. at 5.

KCI now moves for summary judgment on all of plaintiffs' claims. KCI contends it did not violate § 1692c(c) because plaintiffs' cease-and-desist letter pertained only to the accounts that predated plaintiffs' letter, and KCI's subsequent attempts to contact plaintiffs pertained only to new accounts that were placed with KCI in May, June, July, and August of 2003. KCI also contends that the four telephone calls it placed to plaintiffs did not constitute harassment in violation of § 1692d(6). Further, KCI contends its conduct did not amount to deceptive or unconscionable conduct in violation of the KCPA.

## SUMMARY JUDGMENT STANDARD [2]

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir.), *cert. denied,* 537 U.S. 816, 123 S.Ct. 84, 154 L.Ed.2d 20 (2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d

---

**2.** Plaintiffs and defendant have each filed a motion for summary judgment. The court will address the motions together. The legal standard does not change if the parties file cross-motions for summary judgment. Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *Atl. Richfield Co. v. Farm Credit Bank,* 226 F.3d 1138, 1148 (10th Cir.2000).

1242, 1246 (10th Cir.2000) (citing *Adler,* 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *see also Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore,* 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## ANALYSIS

For the reasons explained below, the court agrees with KCI that it is entitled to summary judgment on all of plaintiffs' claims. The plain language of the FDCPA does not prohibit a debt collector from communicating with a consumer regarding future debts even if the debt collector receives a cease-and-desist letter from the consumer that can arguably be read as a request to cease communications regarding all currently existing as well as future debts. Further, the fact that KCI placed four telephone calls to plaintiffs over the course of seven days without leaving a message does not, as a matter of law, constitute harassment under the FDCPA. To the extent that plaintiffs now seek to assert a claim that KCI violated another provision of the FDCPA, specifically 15 U.S.C. § 1692c(a)(2), by communicating directly with plaintiffs after KCI received notice that plaintiffs were represented by counsel, that argument is without merit because KCI did not communicate or attempt to communicate directly with plaintiffs with respect to any debt for which KCI knew plaintiffs were represented by counsel. Lastly, KCI is also entitled to summary judgment on plaintiffs' KCPA claim because KCI did not engage in any deceptive or unconscionable act by virtue of communicating with plaintiffs after May of 2003.

## I. FDCPA Claims

Congress passed the FDCPA in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a); *accord Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir.2002) (quoting § 1692(a)). The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *accord Johnson,* 305 F.3d at 1107 (quoting § 1692(e)). The FDCPA generally prohibits debt collectors from engaging in harassing and abusive conduct, using false, deceptive, and misleading representations, and using unfair or unconscionable means to collect debts. *Johnson,* 305 F.3d at 1107 (citing 15 U.S.C.

§§ 1692d, 1692e, 1692f). A debt collector who violates these broad prohibitions is subject to civil liability or administrative enforcement by the Federal Trade Commission ("FTC"). *Id.* (citing 15 U.S.C. §§ 1692k, 1692*l*). "Because the FDCPA ... is a remedial statute, it should be construed liberally in favor of the consumer." *Id.*

In this case, plaintiffs contend KCI violated three specific provisions of the FDCPA. For the reasons explained below, the court disagrees.

### A. Section 1692c(c): The Effect of Plaintiffs' Cease–and–Desist Letter [3]

Title 15 U.S.C. § 1692c(c) states as follows:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt . . . .

Plaintiffs contend KCI violated this provision of the FDCPA by contacting plaintiffs after receiving plaintiffs' cease-and-desist letter. Plaintiffs point out that their cease-and-desist letter referred to "All Accounts" and directed KCI to "CEASE AND DESIST all attempts to collect the above debt" (emphasis in original). This language, by its plain terms, could arguably be read to apply to currently existing debts as well as future debts. Not every

violation of a consumer's wishes, however, is a violation of the FDCPA. The court must examine the statutory language to determine what, precisely, the FDCPA prohibits.

The court begins with the language of the statute. *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002); *In re Wise,* 346 F.3d 1239, 1241 (10th Cir.2003); *Center for Legal Advocacy v. Hammons,* 323 F.3d 1262, 1267 (10th Cir.2003). "[T]he court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Center for Legal Advocacy,* 323 F.3d at 1267 (quotation omitted). "If the statutory language is not ambiguous, and 'the statutory scheme is coherent and consistent,' further inquiry is unneeded." *Wise,* 346 F.3d at 1241 (quoting *Barnhart,* 534 U.S. at 450, 122 S.Ct. 941 (quotation omitted)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *accord Wise,* 346 F.3d at 1241 (quoting *Robinson,* 519 U.S. at 341, 117 S.Ct. 843).

The plain language of the statute reveals that it does not prohibit communications regarding future debts. The statute specifically refers to debt that the consumer has *refused* to pay. In order for a consumer to refuse to pay a debt, he or

---

**3.** Plaintiffs' cease-and-desist letter directs KCI to cease *attempts to collect plaintiffs' debts* rather than directing KCI to cease *further communications* or notifying KCI that plaintiffs refuse to pay the debt, which is technically what the statute requires. *See* 15 U.S.C. § 1692c(c) (requiring the debt collector to cease further communications when the "consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the

consumer wishes the debt collector to cease further communication with the consumer"). The court is not ruling on the issue of whether the substance of plaintiffs' cease-and-desist letter was sufficient to require KCI to stop attempting to contact plaintiffs because: (1) the parties did not raise this issue; and (2) the issue is moot given the court's ruling that KCI did not violate the FDCPA in any event.

she must of course have been asked to pay the debt. The statute similarly refers to ceasing *further* communications with the consumer. Again, this indicates that the debt collector can only be directed to cease communications with respect to a debt about which the debt collector has already communicated with the consumer. The statute prohibits the debt collector from communicating further with the consumer only "with respect to *such debt*" (emphasis added), and thus is limited in scope to debt that the consumer has refused to pay or to debt with respect to which the debt collector has already communicated with the consumer. Thus, this language connotes a type of debt that the debt collector has already engaged in efforts to attempt to collect—that is, already existing debts, not future debts.

█ This interpretation of the statute is consistent with what appears to be the only legal authority on this issue other than the plain language of the statute itself.[4] An informal staff letter from the Federal Trade Commission dated December 30, 1977, gives the following advisory opinion:

> Additionally, you ask whether 805(c) [of the FDCPA, which is currently codified at § 1692c(c) ], if followed, will prohibit a debt collector from contacting a consumer if the collector receives subsequent assignment of a separate debt owed by the consumer.

§ 805(c) is specific to the debt the debt collector is attempting to collect and for which the collector receives notice that the consumer either [sic] refuses to pay. *It would not prevent communications with the consumer concerning other debts subsequently assigned to the collector unless the consumer also subsequently invokes the protection of § 805(c) with respect to those debts.*

Letter from Alan Refkin, Attorney, Division of Special Statutes, Federal Trade Commission, to Leland W. Atteberry, Research Data, Inc. 5 (Dec. 30, 1977) (unpublished FTC informal staff letter; emphasis added), *available at* Robert J. Hobbs, Nat'l Consumer Law Center, Fair Debt Collection (4th ed. Supp.2003) (Fair Debt Collection Companion CD–ROM) ("Atteberry letter").[5] The FTC is the administrative agency charged with enforcing the FDCPA. 15 U.S.C. § 1692*l*. Nevertheless, because the FTC's authority under the FDCPA is limited, *id.* § 1692*l* (d) (administrative agencies may not promulgate rules and regulations under the FDCPA), FTC pronouncements interpreting provisions of the FDCPA have limited precedential value. *See Lewis v. ACB Bus. Services, Inc.,* 135 F.3d 389, 399 (6th Cir. 1998); *Pressley v. Capital Credit & Collection Serv.,* 760 F.2d 922, 925 (9th Cir.1985). They are by no means binding. *See Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d

---

4. The court has conducted thorough research and has not located any case law that specifically addresses this issue. Further, the FDCPA legislative history does not contain any meaningful guidance on this precise issue. *See generally* S.Rep. No. 95–382 (1977) (report of the Committee of Banking, Housing, and Urban Affairs), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1695–1703; H.R.Rep. No. 95–131 (1977) (report from the Committee of Banking, Finance and Urban Affairs); 123 Cong. Rec. 28,109–13 (1977); 123 Cong. Rec. 27,383–87 (1977); 123 Cong. Rec. 10,239–56 (1977).

5. This informal staff letter is an unpublished work that appears to be unavailable via electronic means such as Westlaw or LEXIS. As such, KCI would have been well advised to have attached a copy of this letter as an exhibit to its memorandum in support of its motion for summary judgment. *See* D. Kan. Rule 7.6(b) (requiring an unpublished decision that is unavailable via electronic means such as Westlaw or LEXIS to be attached as an exhibit to the memorandum or brief).

1367, 1372 n. 2 (11th Cir.1998); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322, 1327 n. 8 (7th Cir. 1997). Thus, courts have rejected FTC opinions that conflict with the plain language of the FDCPA. *See, e.g., Dutton v. Wolpoff & Abramson,* 5 F.3d 649, 654 (3d Cir.1993); *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1513 (9th Cir.1994); *Scott v. Jones,* 964 F.2d 314, 317 (4th Cir.1992). Courts have, however, found FTC opinions to be helpful and persuasive. *See, e.g., Romine v. Diversified Collection Servcs., Inc.,* 155 F.3d 1142, 1147 nn. 3, 5 (9th Cir.1998) (finding an informal FTC staff letter interpreting the FDCPA to be persuasive); *Bass,* 111 F.3d at 1327 n. 8 (giving due weight to an FTC opinion interpreting the FDCPA).

Thus, in this case, the court is well aware of the very limited precedential value of the Atteberry letter, particularly in light of the fact that it is an informal staff letter that does not represent the official views of the FTC on this matter. Nevertheless, the court finds this advisory opinion to be persuasive for three reasons. First, the letter appears to be the only other pronouncement on this precise issue. Second, the letter is from the FTC, which is the agency charged with administering the FDCPA, and therefore the letter reflects some degree of expertise with such matters. *See, e.g., Britton v. Weiss,* No. 89–CV–143, 1989 WL 148663, at *3 (N.D.N.Y. Dec. 8, 1989) (giving substantial consideration in an FDCPA case to an FTC informal opinion letter by Mr. Refkin, the same attorney who authored the Atteberry letter). Third, and perhaps most importantly, this interpretation of the statute is consistent with the court's interpretation of the plain language of the statute. *See, e.g., Beggs v. Rossi,* 145 F.3d 511, 512–13 (2d Cir.1998) (agreeing with FTC policy statement "which accords with the plain meaning of the statute"); *Hawthorne,* 140 F.3d at 1372 n. 2 (noting the

FTC's commentary supported the court's understanding of the statute). Thus, the court is of the opinion that the Atteberry letter lends additional support to the court's conclusion that the FDCPA's prohibition on communicating with a consumer after the consumer directs the debt collector to cease communications applies only to currently existing debts, not future debts.

In this case, KCI continued to communicate with plaintiffs after receiving plaintiffs' cease-and-desist letter. The record, however, reflects that those communications did not pertain to any existing debt for which KCI was required to cease communication under the FDCPA. When KCI communicated with plaintiffs in May of 2003, the only cease-and-desist letter KCI had received was plaintiffs' March 21, 2003, letter. Under the FDCPA, that letter prohibited KCI from communicating with plaintiffs with respect to debts that predated the letter. The record reflects that KCI's communications with plaintiffs in May of 2003 pertained to the five new accounts that were placed with KCI in May of 2003, and therefore KCI did not violate § 1692c(c) by virtue of those communications. After May of 2003, KCI communicated with plaintiffs, but only with respect to new debts that were assigned to KCI in June, July, and August of 2003. The record does not reflect that KCI received a written notice at any time after May of 2003 that would trigger § 1692c(c)'s no-contact provision with respect to those debts. Thus, the FDCPA did not require KCI to cease communicating with plaintiffs with respect to the debts that were assigned to KCI in June, July, and August of 2003. Plaintiffs have not directed the court's attention to any evidence in the record from which it could be reasonably inferred that KCI's May 2003 communications pertained to plaintiffs' pre-March 21, 2003, accounts, or that

KCI's communications with plaintiffs after May of 2003 pertained to any of plaintiffs' accounts other than those placed with KCI in June, July, and August of 2003. Accordingly, the court finds that plaintiffs have failed to raise a genuine issue of material fact sufficient to withstand defendants' motion for summary judgment, whereas KCI has demonstrated that it is entitled to summary judgment on plaintiffs' § 1692c(c) claim.

### B. Section 1692d(6): Harassment Under the FDCPA

Plaintiffs also allege that KCI's telephone calls to plaintiffs on May 7, 8, 12, and 13, 2003, violated 15 U.S.C. § 1692d(6), which provides as follows:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with a collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this Section:
. . .

(6) . . . the placement of telephone calls without meaningful disclosure of the caller's identity.

Plaintiffs do not explain precisely how they believe KCI violated § 1692d(6) by virtue of KCI's calls to their home on May 7, 8, 12, and 13, 2003. In fact, plaintiffs do not attempt to refute KCI's argument that these telephone calls do not, as a matter of law, constitute harassment in violation of § 1692d(6). Thus, insofar as plaintiffs' FDCPA claim is based on KCI's alleged violations of § 1692d(6), that aspect of

KCI's motion for summary judgment is granted as unopposed.

█ It is also granted on its merits. The only colorable violation of § 1692d(6) that the court can envision is the fact that KCI did not leave a message for plaintiffs when KCI placed the automated telephone calls.[6] Section 1692d(6) does not, when read in isolation, specify whether a debt collector who calls a consumer must leave a message when the consumer does not answer the call. When this provision, however, is read in conjunction with the entirety of § 1692d, it is clear that not leaving a message is not the type of harassing, oppressive, or abusive conduct that violates the statute. *See, e.g., U.S. Nat'l Bank v. Indep. Ins. Agents of Am., Inc.,* 508 U.S. 439, 455, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) ("Statutory construction is a holistic endeavor, and, at a minimum, must account for a statute's full text . . . and subject matter."). Section 1692d generally prohibits debt collectors from engaging in harassing, oppressive, or abusive conduct. Without limiting that general prohibition, it specifically prohibits using or threatening to use violence or criminal means to harm anyone; using obscene, profane, or abusive language; publishing deadbeat lists; making repeated telephone calls intended to annoy or harass; and of course making telephone calls without disclosing the caller's identity, which is the complained-of conduct here. *See* § 1692d(1)-(6).

In this case, KCI simply placed four telephone calls to plaintiffs over the course of seven days and chose not to leave a

---

**6.** This theory assumes plaintiffs had an answering machine or voice mail system upon which KCI could have left a message, but the record does not reflect whether plaintiffs did in fact have any such recording device.

The court cannot envision a theory that KCI affirmatively attempted to hide its identity when it placed the telephone calls because

Mr. Bryan's May 13, 2003, letter lists the KCI telephone numbers from which the four telephone calls were placed to plaintiffs. Thus, it appears that plaintiffs knew KCI called them by virtue of a caller identification system and further that KCI did not attempt to block plaintiffs' caller identification when it placed the telephone calls.

message. There is nothing harassing, oppressive, or abusive about this conduct. Certainly, it does not fall within the realm of the other types of egregious conduct specifically prohibited by § 1692d. Further, requiring a debt collector to leave such messages could lead to other unnecessary violations of the FDCPA. *See generally* Hobbs, *supra*, § 5.4.7.2, at 170 (4th ed.2000) (discussing the fact that debt collectors must exercise care when leaving messages because of the potential for violating other FDCPA provisions, and concluding that a debt collector can avoid these issues by "leaving no message and simply calling back later"). Accordingly, the court holds that, as a matter of law, KCI did not violate § 1692d(6).

## C. Section 1692c(a)(2): Plaintiffs' Representation by Counsel

In plaintiffs' response to KCI's motion for summary judgment, plaintiffs also contend KCI violated § 1692c(a)(2) by contacting plaintiffs directly after KCI knew that plaintiffs were represented by counsel. Plaintiffs' complaint contains no such allegation, and plaintiffs do not seek leave to amend their complaint to assert this claim. Accordingly, no such § 1692c(a)(2) claim is in this case. Nevertheless, to the extent plaintiffs may be seeking to amend their complaint to assert such a claim, leave to amend is denied as futile because it is apparent from the record that the claim is meritless.

■ Section 1692c(a)(2) prohibits a debt collector from communicating directly with a consumer "if the debt collector knows the consumer is represented by an attorney *with respect to such debt* and has knowledge of, or can readily ascertain such attorney's name and address." 15 U.S.C. § 1692c(a)(2) (emphasis added). As this statute applies to this case, the court finds the Third Circuit's ruling in *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir.1991),

to be persuasive. In *Graziano*, the Third Circuit held that a debt collector does not violate § 1692c(a)(2) by communicating directly with a consumer regarding additional debts even if the debt collector knows the consumer is represented by an attorney with respect to a previous debt. *Id.* In *Graziano*, the consumer retained an attorney to help resolve a credit dispute with a debt collector. *Id.* at 109. The attorney became involved and requested that the debt collector verify the debt. *Id.* Later, the debt collector sent notices of two additional debts directly to the consumer. *Id.* at 110. The Third Circuit focused on the fact that § 1692c(a)(2) "precludes communication by a debt collector with a debtor where the debt collector knows that the debtor is represented by counsel 'with respect to such debt.'" *Id.* at 113 (quoting § 1692c(a)(2)). The Court affirmed the district court's grant of summary judgment in favor of the debt collector based on the fact that no violation of § 1692c(a)(2) occurred because at the time the debt collector communicated with the consumer regarding the two additional debts, the debt collector had not been informed that the consumer was also represented by counsel with respect to the two additional debts. *Id.; see also, e.g., Shrestha v. State Credit Adjustment Bureau, Inc.*, 117 F.Supp.2d 142, 146 (D.Conn.2000) (granting summary judgment in favor of debt collector because although the debt collector knew the consumer was represented by an attorney with respect to the return of certain bank funds, the debt collector did not know the consumer was represented by an attorney with respect to the debt at issue); *Goodman v. S. Credit Recovery, Inc.*, Nos. 97–2385 & 98–1174, 1999 WL 14004, at *5 (E.D.La.1999) (granting summary judgment in favor of debt collector because the "with respect to such debt" language "does not require a debt collector to assume that an attorney

representing a consumer with respect to one or more specific debts represents that consumer with respect to all obligations which are owed by the consumer"); *Robinson v. Transworld Sys., Inc.*, 876 F.Supp. 385, 390 (N.D.N.Y.1995) (granting summary judgment in favor of debt collector because the debt collector's knowledge that the consumer was previously represented by an attorney with respect to a different debt did not preclude the debt collector from communicating directly with the consumer regarding a subsequent debt collection matter).

Like *Graziano*, in this case, there is no evidence in the record from which it can reasonably be inferred that KCI contacted plaintiffs directly with respect to any debt for which KCI knew plaintiffs were represented by counsel. Mr. Bryan's letters notably do not specify the accounts for which he was representing plaintiffs. At most, it can be reasonably inferred by virtue of his letters dated May 13 and 20, 2003, that KCI knew he was representing plaintiffs with respect to accounts that were placed with KCI for collection in May of 2003 or before. The record does not reflect that KCI contacted plaintiffs directly with respect to those accounts at any time after KCI received those two letters from Mr. Bryan—that is, at any time after KCI arguably learned that plaintiffs were represented by Mr. Bryan with respect to those accounts. To the extent that KCI may have contacted plaintiffs directly regarding new accounts that were placed with KCI for collection in June, July, and August of 2003, there is no evidence that Mr. Bryan or plaintiffs ever informed KCI that plaintiffs were represented by counsel "with respect to such debt," *i.e.*, with respect to those accounts. Thus, any attempt by plaintiffs to assert such a § 1692c(a)(2) claim would be futile because the claim is meritless.

## II.   KCPA Claim

The KCPA generally prohibits suppliers from engaging in deceptive and/or unconscionable acts or practices in connection with consumer transactions. Kan. Stat. Ann. §§ 50–626 and 50–627. KCI contends it is entitled to summary judgment on plaintiffs' KCPA claim because KCI did not, as a matter of law, engage in any deceptive or unconscionable acts or practices. Plaintiffs do not oppose KCI's motion for summary judgment on their KCPA claim, and therefore the court grants this aspect of KCI's motion for summary judgment as unopposed.

It is also granted on its merits. Ordinarily the question of whether an act or practice is deceptive under § 50–626 of the KCPA is a question of fact for the jury. *Farrell v. Gen. Motors Corp.*, 249 Kan. 231, 243, 815 P.2d 538, 547 (1991); *Waggener v. Seever Sys., Inc.*, 233 Kan. 517, 522, 664 P.2d 813, 818 (1983). Summary judgment is appropriate, however, if there is no evidence of deceptive conduct. *Gonzales v. Assocs. Fin. Serv. Co. of Kan., Inc.*, 266 Kan. 141, 166, 967 P.2d 312, 328 (1998). Here, the record is completely devoid of evidence from which it can be reasonably inferred that KCI engaged in any deceptive conduct. The only theory the court can envision based on the record would be if KCI would have represented to plaintiffs that KCI would abide by plaintiffs wishes and cease communicating with plaintiffs regarding both currently existing and future debts. KCI's May 19, 2003, letter to Mr. Bryan, however, specifically stated to the contrary. It stated: "If any future accounts are placed with our office for collection, your client may feel free to call or write the undersigned and request no further communication on these subsequently placed accounts." Thus, plaintiffs have failed to raise a genuine issue of material fact sufficient to withstand sum-

mary judgment on their KCPA § 50–626 deceptive act claim, and KCI is entitled to summary judgment on this claim.

Whether an act or practice is unconscionable under § 50–627 of the KCPA is a question for the court. § 50–627(b); *Waggener*, 233 Kan. at 522, 664 P.2d at 818. The court is unpersuaded based on the current state of the record that KCI engaged in any unconscionable conduct whatsoever. Accordingly, plaintiffs have also failed to raise a genuine issue of material fact sufficient to withstand summary judgment on their KCPA § 50–627 unconscionability claim, and KCI is also entitled to summary judgment on this claim.

**IT IS THEREFORE ORDERED BY THE COURT** that KCI's motion for summary judgment (Doc. 10) is granted and plaintiffs' motion for summary judgment (Doc. 16) is denied. The clerk is directed to enter judgment in favor of KCI. This case is dismissed.